**Bennie L. WADE, Petitioner,**

v.

**DEPARTMENT OF the NAVY, Respondent.**

No. 87–3230.

United States Court of Appeals, Federal Circuit.

Sept. 18, 1987.

Neil C. Bonney, White & Selkin, Norfolk, Va., argued for petitioner. With him on the brief was Robert H. White.

Jonathan S. Baker, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Also on the brief was Alex H. Adkins, Office of Civilian Personnel Management, Norfolk, Va., of counsel.

Before DAVIS, Circuit Judge, SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge.

SKELTON, Senior Circuit Judge.

## DECISION

The decision of the Merit Systems Protection Board (MSPB or the Board), Docket No. PH07528610510, 32 MSPR 642, sustaining the Department of the Navy's removal of Bennie L. Wade for unauthorized absence from his job, is reversed and remanded.

## OPINION

The petitioner, Bennie L. Wade (petitioner or Wade), was employed as a warehouse worker at the Norfolk Naval Supply Center of the Department of the Navy in Norfolk, Virginia, where he had worked for 10 years with a good service record. He became ill in 1984 and his illness caused him to be absent from his job a number of times in 1985 and 1986. He asked the agency to excuse his absences because of his illness. In support of his request, he submitted letters from two different doctors who had examined and treated him. These letters showed that during the times he was absent from work he was ill with cancer, recurring urinary infections, prostatitis, and pancreatitis, among other ailments. He also submitted medical records from the Bayview Plaza Minor Emergency Center. Wade informed the agency that his sickness incapacitated him from working due to pain and his inability to do the heavy lifting and carrying incident to his job. Nevertheless, the agency denied his request for sick leave and removed him from his job effective May 12, 1986, because of his absences from work from December 22, 1985, through January 7, 1986, and from January 22 through February 7, 1986, and from March 4 through March 18, 1986. He appealed the agency removal decision to the MSPB, which held a hearing.

The petitioner appeared and testified at the hearing conducted by an administrative judge. He testified that the reason he was absent from work on the dates involved was because he was incapacitated for the performance of duties by sickness and was receiving medical treatment. He said that he was not physically able to work because his infections and ailments caused pain in his back and sides, and he was urinating blood and suffering from fever. He explained that his job was physically demanding because it required him to lift and carry heavy objects. He introduced into evidence a two-page letter or medical report from Dr. Nelson M. Karp, one of the doctors who had examined and treated him many times for his physical ailments during the period involved. Dr. Karp's report stated, among other things:

> Mr. Bennie Wade is a 33 year old white male who, according to history given by him, underwent a complete retroperitoneal lymph node dissection secondary to lymphangitic cancer. Consequently he has had recurring bouts of infection involving his kidneys, bladder, prostate and pancreas, i.e. pancreatitis. All of these organs are retroperitoneal and/or have their drainage to the retroperitoneal lymph nodes. Consequently these organs have impaired immune functions. I have seen Mr. Wade numerous times for these problems.

> ---

> On January 6, 1986 patient complained of left flank pain and his urine study revealed an infection with a diagnosis of pyelonephritis being made, and he was treated appropriately.

> ---

> Mr. Wade was seen again on March 3, 1986 by Dr. Stec for gross hematuria, i.e. blood in urine. Dr. Stec being unfamiliar with the patient referred him to come back to see me. I saw the patient on March 5, 1986 at which time a repeat urine showed a large amount of blood and bacteria, and his CBC was normal. Patient also complained of pain over the kidney area. His diagnosis this day was that of acute pyelonephritis, i.e. kidney infection and he was placed on Bactrim, i.e. sulfa medication and a pain medication.

---

When he returned on March 18, 1986 his symptoms were recurring. His urine revealed infection and his serum amylase was elevated suggesting concomitant pancreatitis. Patient was treated with antibiotics and other medications for his pancreatitis.

The petitioner also introduced into evidence a medical report of Dr. Andrew M. Fekete, another doctor who had examined and treated him during the period involved. His report stated:

This will advise that the above captioned patient [Bennie Wade] has been seen on numerous occasions in the past several months at the Bayview Plaza Urgent Care Center. Among other things, he has been treated for pancreatitis, pyelitis, and prostatitis.

---

I failed to mention that in the not too distant past this patient was subjected to surgery (an extensive lymph node dissection) because of a lymphatic-type carcinoma. It might be that such condition has predisposed to his susceptibility or sensitivity to infection.

I trust that this information is self-explanatory. If I might be of further assistance in Mr. Wade's case, please let me know. Needless to say, his time out because of illness has been justified.

The petitioner's roommate, Jeffrey Riffe, who lived with him from November 1985, through March 1986, testified that Wade was frequently ill during that period of time and suffered extreme pain with fever that caused him to spend most of his time on a couch or in bed with pain in his lower back and during urination/passing blood. He said that in his opinion Wade was unfit for work because of his physical condition.

Wade also introduced into evidence 62 pages of medical records of Bayview Plaza Minor Emergency Care Center showing his many examinations and treatments that he received there during the period in question.

The Government cites the testimony of Dr. Victoria Whitelock on the medical phase of the case. She was the Head of the Occupational Medical Department. She had never examined nor treated the petitioner. All that she did was examine his medical records and then testify that his ailments would not incapacitate him more than a couple of days and after that time he would be able to do the work required of him by his job. Accordingly, she determined that Wade was not incapacitated during the periods of his absence from work.

The administrative judge relied on the testimony of Dr. Whitelock and found that the agency had proven by a preponderance of the evidence the charge of excessive unauthorized absence and sustained the removal decision of the agency, which was approved by the full Board. Our review of this finding is limited to determining whether it is supported by substantial evidence. *Brewer v. United States Postal Serv.*, 647 F.2d 1093, 1096 (Ct.Cl.1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 382 (1983) (Nies, J., additional comments) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

■ The Government based its charge entirely on the testimony of Dr. Whitelock as to Wade's illness and capacity for work and offered no other evidence in that regard. After a careful review of the record, we have concluded that her testimony is insufficient to support the decision of the administrative judge and the Board in this case. She had no first-hand information about Wade's physical condition, as she had never examined him, and, as far as the record shows, she had never even seen him before the trial. Her testimony was based wholly on hearsay medical reports that others had prepared. Furthermore, her testimony was conflicting. She admitted on the one hand that Wade had medical problems

including recurring and painful genital urinary infections, prostatitis and pancreatitis during the period of his absence, but she failed to mention that he was also suffering from lymphangitic cancer, pyelonephritis, gross hematuria and phyelitis, and that he had undergone a complete retroperitoneal lymph node dissection which impaired his immunity from infections. On the other hand she testified that he was not incapacitated for doing the work of his job during this period. However, on cross-examination she admitted that she did not know what his job was nor the work that it required. Under all of these circumstances, her testimony as to Wade's physical condition and his capacity to work at his job had very little, if any, probative force and did not rise to the level of substantial evidence.

It is significant that everyone connected with the trial of this case has agreed that Wade was ill and receiving medical examinations and treatment on the dates he was absent from work, including Wade, his two doctors, his roommate, Dr. Whitelock and the administrative judge (the judge). In fact, the judge found:

> *There is no dispute* that the appellant was absent from work on the dates set forth in the [removal] proposal letter *and that his absences were due to illness.*

(Emphasis Supplied).

Furthermore, the agency conceded that he was ill. In this regard the judge found:

> The agency concedes that the appellant submitted medical evidence to substantiate his illness.

Dr. Fekete stated in his medical report:

> Needless to say, his [Wade's] time out because of illness has been justified.

■ Wade contends that in refusing to grant his request for sick leave the agency violated 5 C.F.R. § 630.401 which provides:

### SUBPART D—SICK LEAVE

§ 630.401 Grant of sick leave.

An agency shall grant sick leave to an employee when the employee:

(a) Receives medical, dental, or optical examination or treatment;

(b) Is incapacitated for the performance of duties by sickness, injury, or pregnancy and confinement;

(c) Is required to give care and attendance to a member of his immediate family who is afflicted with a contagious disease; or

(d) Would jeopardize the health of others by his presence at his post of duty because of exposure to a contagious disease.

We agree. The regulation mandates the granting of sick leave by the agency when the events listed in subdivisions (a), (b), (c) *or* (d) occur. There is no dispute that the events listed in subdivision (a) did occur. Everyone who testified agreed that Wade did receive medical examinations and treatment during the periods of his absence. The agency was required to grant sick leave if the events occurred that are described in any one of the subdivisions of the regulation. We hold that the agency violated subdivision (a) of the regulation when it denied Wade's request for sick leave and that his removal for being AWOL was improper.

The judge and the Board based their decisions on the contents and theory of subdivision (b) of the regulation, which provides that the agency shall grant an employee sick leave when he is incapacitated for the performance of duties by sickness, although they did not cite that subdivision. Even on that theory the evidence on Wade's capacity to work was conflicting, with only the testimony of Dr. Whitelock indicating that he was not incapacitated. We have already concluded that her testimony was not substantial evidence that would support the Board's decision. In any event, the judge and the Board completely ignored the provisions of subdivision (a) of the regulation that required sick leave to be granted if Wade was receiving medical examination and treatment, which was undisputedly the case. This being so, Wade was entitled to the sick leave whether he was incapacitated or not. The judge and the Board simply used the wrong rule of law to decide the case.

We hold that the decision of the Board was arbitrary, an abuse of discretion, and obtained without procedures required by regulation having been followed, and was unsupported by substantial evidence. Under these circumstances, we are required by 5 U.S.C. § 7703(c) to set it aside. The statute provides in pertinent part:

5 U.S.C. § 7703

(c) In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

Accordingly, the decision of the Board is reversed and the case is remanded to the Board for disposition consistent with this opinion.

*Reversed and Remanded.*