**DEPARTMENT OF THE TREASURY, OFFICE OF CHIEF COUNSEL, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent**

National Treasury Employees Union, Intervenor.

No. 88–1159.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1989.

Decided May 2, 1989.

Rehearings Denied July 17, 1989.

Supplemental Opinion of July 17, 1989.

See also, D.C.Cir., 873 F.2d 1473.

Peter R. Maier, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, were on the brief, for petitioner.

Robert J. Englehart, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, were on the brief, for respondent. Ruth E. Peters, Atty., Federal Labor Relations Authority, also entered an appearance for respondent.

Clinton D. Wolcott, with whom Gregory O'Duden and Elaine Kaplan were on the brief, for intervenor. Lois G. Williams also entered an appearance for intervenor.

Before RUTH BADER GINSBURG, and SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

This case raises the issue whether federal employees in the excepted service, who have no statutory right to appeal adverse

personnel actions, may nevertheless require an agency to bargain over creation of a grievance arbitration procedure permitting a challenge to those personnel actions. The Treasury Department, contending that arbitration over such matters is inconsistent with federal law and thus non-negotiable under Title VII of the Civil Service Reform Act ("CSRA"), petitions for review of a Federal Labor Relations Authority decision holding the contrary. We conclude that the legislative history and structure of the CSRA do show that Congress intended these excepted service employees to have no right to arbitral review, and therefore grant the petition for review.

## I.

The CSRA divides civil service employees into three main classifications: senior executive service (whose status is not relevant to this case), competitive service, and excepted service. Generally speaking, employees in the competitive service, who must pass civil service exams, are granted an array of substantive and procedural protections not bestowed on excepted service employees—unless the latter are veterans, in which case they are referred to as "preference eligibles," 5 U.S.C. § 2108(3) (1982),[1] and treated for purposes of adverse actions similarly to those in the competitive service.[2] Excepted service employees gain admission into the federal service without the need to pass civil service exams (although many are highly skilled), and presumably for that reason, Congress thought it inappropriate to grant them certain statutory rights available to those in the competitive service, unless they were veterans. We shall refer to nonpreference eligible excepted service employees, whose status and rights are at issue in this case, as NEES employees.

Perhaps the most important protections enjoyed by the competitive service are those—set forth in chapters 43 and 75 of the Act—which buffer the prospect of discipline or discharge. Chapter 43 grants agencies authority to "reduce in grade or remove an employee for unacceptable performance," 5 U.S.C. § 4303(a) (1982 & Supp. V 1987), and chapter 75 permits the discipline of any employee for "such cause as will promote the efficiency of the service." Id. § 7513(a). In either case, however, a competitive service employee or a

veteran in the excepted service may, as a matter of right, appeal such "adverse action" to the Merit System Protection Board, id. § 4303(e); id. § 7513(d), 7511(a), and, if dissatisfied with the MSPB's decision, appeal further to the United States Court of Appeals for the Federal Circuit. Id. § 7703(b)(1). This right to appeal adverse actions under either chapter is not granted to NEES employees, id. § 4303(e), § 7511(a), although Congress delegated to the Office of Personnel Management authority to grant any category of the excepted service the right to appeal to the MSPB (and thereby to the Federal Circuit) adverse disciplinary actions under chapter 75 (but not adverse actions under chapter 43). Id. § 7511(c). OPM has not as yet chosen to exercise that authority with respect to the NEES employees involved here.

The National Treasury Employees Union represents both competitive service and excepted service employees in the Chief Counsel's Office of the IRS. The union sought a collective bargaining agreement, applying to both categories of employees, that would permit arbitration of adverse personnel action covered by chapters 43 and 75. The Treasury Department, upon review of the proposed agreement by the head of the agency, see id. § 7114(c)(1), rejected that part of the agreement that would give those arbitration rights to NEES employees because, Treasury maintained, to do so would be "inconsistent with Federal law." Id. § 7117(a)(1).

The union appealed Treasury's nonnegotiability determination to the FLRA under 5 U.S.C. § 7117(c), and the FLRA, disagreeing with Treasury, held the proposed contract negotiable. The government, in turn, has petitioned for review of the FLRA's decision here. The question before us is whether Congress permitted NEES employees to gain through collective bargaining, under one portion of the CSRA, adjudicatory appeal rights that were denied them under other parts of the Act. We are thus required to consider the functional interrelationship of various institutions under those statutes: arbitrators, the FLRA, the MSPB, OPM, the Federal Circuit, and the other courts of appeals. Although the FLRA is entitled to deference when interpreting its own organic legislation (the Labor–Management Relations Statute), that is not so when we are obliged to interpret

---

1. The statute also classifies certain close relatives of veterans as preference eligibles, but for convenience we will equate preference eligibles and veterans.

2. By our use of "competitive service employees" throughout this opinion, we refer to both competitive service and preference eligible expected service employees.

other chapters of the CSRA. *NTEU v. FLRA*, 848 F.2d 1273, 1275 (D.C.Cir.1988); *Department of Justice v. FLRA*, 709 F.2d 724, 729 n. 21 (D.C.Cir.1983).

## II.

Treasury argues that the exclusion of NEES employees from MSPB review under both chapters 43 and 75 necessarily means that proposals for grievance arbitration procedures to review adverse personnel actions are nonnegotiable. The FLRA, on the other hand, contends it does not follow that merely by withholding MSPB review rights, Congress meant to exclude NEES employees from access to contractual grievance procedures that lead to arbitration of these issues. *NTEU and Dep't of Treasury*, 30 F.L.R.A. No. 81 (1987); *see NTEU and Dep't of HHS*, 25 F.L.R.A. 1110 (1987), *rev'd sub nom. Department of HHS v. FLRA*, 858 F.2d 1278 (7th Cir. 1988). We, like the Seventh Circuit in *Department of HHS*, agree with the Treasury Department that arbitral review of adverse personnel actions for NEES employees is inconsistent with the remedial scheme constructed by Congress in the CSRA.

We think, as did our sister circuit, that the issue is substantially affected—if not controlled—by the Supreme Court's recent decision in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). There, the Court held that the CSRA precluded a suit for backpay in the United States Claims Court by an excepted service employee who had no right to review of an agency suspension under the CSRA. An inquiry into civil service remedies, according to *Fausto*, must proceed by "examining the purpose of the CSRA, the entirety of its text, and the structure of review that it establishes." *Id.* 108 S.Ct. at 671. This is so because the CSRA replaced an outdated and inefficient patchwork system with "an *integrated* scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* 108 S.Ct. at 672 (emphasis added).

*Fausto* identified two interrelated structural elements of the CSRA which led to the Court's conclusion that NEES employees could not seek a remedy under the Back Pay Act for allegedly unauthorized

suspensions. First, the Court recognized that the CSRA establishes the MSPB as a primary body for resolving disputes over adverse personnel actions, and the Federal Circuit as the exclusive locus of judicial review of MSPB decisions. This scheme "enables the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action," and exclusive Federal Circuit review "[e]ncourages more consistent judicial decisions...." *Id.* 108 S.Ct. at 674 (quoting S.REP. No. 969, 95th Cong., 2d Sess. 52 (1978) U.S.Code Cong. & Admin.News 1978, p. 2723). To allow NEES employees to litigate adverse actions in the Court of Claims under the Back Pay Act would have destroyed that consistency and uniformity.

Second, the Court acknowledged, as had we, that the CSRA generally grants a preferred position to competitive service and preference eligible employees relative to nonpreference eligible excepted service and probationary employees.[3] *Id.* 108 S.Ct. at 674; *see Harrison v. Bowen*, 815 F.2d 1505, 1510 (D.C.Cir.1987). The Court of Claims remedy sought by Fausto would have inverted the preferences by allowing judicial review for excepted service and probationary employees where such review was unavailable for the preferred groups. *Fausto*, 108 S.Ct. at 674.

A similar analysis leads us to reject the FLRA's position here. Congress permitted competitive service employees covered by a collective bargaining agreement to choose, when challenging adverse action under chapters 43 and 75, either review through arbitration or the MSPB. 5 U.S.C. § 7121(e)(1) (1982). But, recognizing that the two procedures might lead to inconsistent treatment, Congress adopted an unusual and sophisticated device to ensure uniformity and MSPB primacy. If an employee chooses arbitration, the arbitrator is governed by MSPB precedent and may not interpret a collective bargaining agreement to reach results that would not be countenanced by the MSPB under its interpretation of the statute. *Id.* § 7121(e)(2). That suggests that Congress did not wish competitive service employees represented by a union to achieve significant protections from removal, demotion, discipline, or discharge under chapters 43 and 75 not available to non-union competitive service em-

---

**3.** Probationary employees are those in any of the three major classifications who must serve a probationary period before final appointment;

while probationers, employees enjoy distinctly limited procedural protections and can be dismissed summarily.

ployees. To further ensure uniformity, the statute provides that appeals from either the MSPB or the arbitrator that involve this class of cases must be taken only to the Federal Circuit. *Id.* § 7121(f), § 7703(b)(1) (1982 & Supp. V 1987).

Therein lie the defects in the union's proposal as it applies to NEES employees. If NEES employees could contest adverse personnel actions through arbitration, which they cannot appeal to the MSPB, arbitrators would not be statutorily bound to apply MSPB precedent to those proceedings, *see U.S. Soldiers and Airmen's Home and AFGE, Local 3090*, 11 F.L.R.A. 692 n.* (1983), and could treat NEES employees more favorably than competitive service employees, thereby inverting the Act's preference for the latter category of employees.[4] In this case, to be sure, the same collective bargaining agreement would cover both competitive service and NEES employees, so it might be thought that arbitrators would tend to apply the statutory standards to both categories. But arbitrators would not be so obliged by the CSRA. Moreover, consistent treatment of the two categories would seem less likely if NEES employees were represented—as we must contemplate—in a separate unit.

The uniformity problem is compounded, because normally arbitrators' decisions under the LMRS may be appealed to the FLRA; only matters under chapters 43 and 75 (applying to the competitive service and veterans) must be appealed to the Federal Circuit. Therefore, an arbitrator's determination as to the propriety of adverse personnel actions taken against an NEES employee could be appealed only to the FLRA, which must apply a very deferential standard of review on most issues, 5 U.S.C. § 7122(a) (1982 & Supp. V 1987), akin to that which governs judicial review of arbitration in the private sector. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4

L.Ed.2d 1424 (1960) (courts may not review merits of an arbitration award as long as it is based on interpretation and application of the collective bargaining agreement).[5] By contrast, the Federal Circuit is directed to set aside an arbitral award to a competitive service employee or veteran if, *inter alia*, it is unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1982 & Supp. V 1987); *Wade v. Department of Navy*, 829 F.2d 1106, 1108–10 (Fed.Cir.1987).

The FLRA suggests an imaginative, if jerry-built, approach to prevent an inverted preference for NEES employees and to achieve uniformity of review. It contends we could hold that the FLRA, when reviewing arbitrators' decisions dealing with NEES employees, must adhere to MSPB precedent as it applies to the competitive service. That proposal strikes us as a proposed amendment of the statute appropriately directed to Congress. Even were we to adopt it, there is of course no assurance, as the FLRA implicitly assumes, that all other circuits to which FLRA decisions may be appealed would follow our lead. And, if we were to accept the FLRA's suggestion, we would ignore another element of Congress' plan for uniformity: that these kinds of cases no matter where they were initially tried would ultimately be reviewed by the Federal Circuit. *See* S.REP. No. 969, 95th Cong., 2d Sess. 52 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723; *Fausto*, 108 S.Ct. at 674. (Paradoxically, FLRA decisions may be appealed to all courts of appeals but the Federal Circuit). A regime whereby the other twelve courts of appeals (but not the Federal Circuit) apply Federal Circuit law in this class of cases seems quite at odds with congressional purpose. Congress originally allowed for review of an MSPB decision "in the Court of Claims or *a* United States court of appeals," *see* 5 U.S.C. § 7703(b)(1) (Supp. II 1978) (emphasis added), *amended by* 5 U.S.C. § 7703(b)(1) (1982), but subsequently amended the statute to limit review to the

---

**4.** The CSRA provides that the MSPB shall sustain an agency decision based on unacceptable performance if it is supported by substantial evidence, 5 U.S.C. § 7701(c)(1)(A) (1982), and shall uphold disciplinary action taken under chapter 75 if it is supported by a preponderance of the evidence. *Id.* § 7701(c)(1)(B). The statute also requires that any alleged flaw in the agency's procedures must constitute "harmful error" in order to justify reversal by the MSPB. *Id.* § 7701(c)(2)(A). But under the proposed grievance procedure, an arbitrator hearing a grievance of an NEES employee would be guid-

ed by the collective bargaining agreement rather than these statutory standards.

**5.** Section 7122 provides that the FLRA may take such action as it considers necessary if, upon review of an arbitral award, it finds the award is deficient—

    (1) because it is contrary to law, rule, or regulation; or

    (2) on other similar grounds to those applied by Federal courts in private sector labor-management relations.

5 U.S.C. § 7122(a) (1982).

Federal Circuit, precisely to avoid the problems of varying decisions in the regional courts of appeals. *See* 5 U.S.C. § 7703(b)(1) (1982); H.R.REP. No. 312, 97th Cong., 1st Sess. 17 (1981) (creation of Federal Circuit ensures uniformity in "administration of law in the area[ ] of ... merit system protection"; S.REP. No. 275, 97th Cong., 1st Sess. 3, 4 (1981) U.S.Code Cong. & Admin.News 1982, pp. 11, 13, 14 (same).

We also note that if the FLRA were affirmed, NEES cases would involve three layers of review of agency action (arbitration—FLRA—court of appeals) rather than the two envisioned by Congress for the competitive service and veterans (MSPB—Federal Circuit or arbitration—Federal Circuit). That outcome seems plainly at odds with Congress' intent to streamline review of adverse personnel actions. *See Fausto,* 108 S.Ct. at 674.

We see, then, that the FLRA's interpretation of the statute runs the risk of inverting the preference granted to competitive service employees and veterans vis-a-vis NEES employees, and threatens MSPB primacy in developing administrative law governing adverse actions against federal employees—both considerations which underlay the Supreme Court's concern in *Fausto.* And the FLRA's suggestion to ameliorate these problems, even were we authorized to accept it, would undermine the Federal Circuit's role in the statutory scheme and introduce an added—and unwanted—level of review.[6]

The FLRA's statutory interpretation, moreover, creates other anomalies inconsistent with congressional purposes. Congress specifically delegated to OPM, not

the FLRA, discretion to extend statutory appeal rights under chapter 75 to NEES employees. In other words, OPM, the Executive Branch's personnel management arm, was given the extraordinary authority to trigger MSPB and federal judicial review of Executive Branch disciplinary actions against NEES employees. Were we to accept the FLRA's position—thus allowing NEES employees covered by a collective bargaining agreement to gain these appeal rights through arbitration—OPM, in order to insure uniformity over the resolution of these issues, could well feel obliged to extend MSPB review to all NEES employees. By taking that action, which would oust the FLRA of jurisdiction, OPM could prevent potential inconsistencies in personnel actions—at least with respect to chapter 75—but only at the cost of surrendering the independence of its decision whether to extend MSPB and judicial review to this class of employees. The FLRA, it would appear, may in that way force OPM's hand, an outcome which seems inconsistent with the congressional delegation to OPM.[7]

Even if OPM did extend chapter 75 review procedures to NEES employees, it would lack the statutory authority to do so for chapter 43 personnel actions (based on unacceptable performance). This would mean unionized NEES employees could gain a substantial advantage over those not covered by collective bargaining agreements, because the former could gain review by an arbitrator of discipline or discharge for poor work performance, while the latter would have no such right of review by either an arbitrator or the MSPB. Generally, however, as we have

---

6. We also reject the FLRA's assertion, as we did in *Department of Justice v. FLRA,* 709 F.2d 724, 728–29 (D.C.Cir.1983), that because Congress did not exclude excepted service employees from the broad definitions of "employee" and "grievance," *see* 5 U.S.C. §§ 7103(a)(2), 7103(a)(9) (1982), it must have intended to permit grieving of adverse actions. In *Department of Justice,* we held that probationary employees could not compel a federal agency to bargain over a grievance procedure addressing termination of probationers. Though the structure of the CSRA may bear somewhat differently on NEES employees than it does on probationers, we adhere to our view that "[d]etermination of negotiability issues cannot be resolved by mere reference to the broad definitional provisions in the statute." *Department of Justice,* 709 F.2d at 729 n. 22.

7. Intervenor NTEU argues that Congress never meant for OPM to have complete discretion in

this area, but only discretion to determine which excepted service employees held positions of confidential or policymaking character (and should thus be excluded from MSPB review). Although there is some legislative history indicating that Congress meant for OPM to perform the sorting function that intervenor suggests, we cannot read that legislative history to narrow drastically the broad grant of discretion given by the plain language (and the legislative history) of § 7511(c). *See* S.REP. No. 969, 95th Cong., 2d Sess. 49 (1978) U.S.Code Cong. & Admin.News 1978, p. 2723 (subsection 7511(c) "permits the Office of Personnel Management, *in its discretion,* to extend adverse action and appeal coverage to positions or groups of positions [in the excepted service]") (emphasis added).

noted, the statutory structure manifests a desire for equal substantive protections against discipline or discharge for all federal employees in the same classification. *See, e.g.,* 5 U.S.C. § 7121(e), § 7121(f) (1982). We think it implausible, therefore, that Congress intended to permit such disparate treatment for unionized NEES employees on this particular matter.

That Congress envisioned the availability of grievance procedures for certain specialized personnel, notwithstanding the absence of a statutory right of appeal, does not alter our conclusion that arbitration is unavailable for NEES employees. Congress provided that matters relating to adverse personnel actions which arise under *"other personnel systems ...* may, in the discretion of the aggrieved employees, be raised either under the appellate procedures, *if any,* applicable to those matters, or under the negotiated procedure, but not both." 5 U.S.C. § 7121(e)(1) (emphasis added). The inclusion of the words "if any" does show Congress contemplated that some of these employees, who fall under specialized personnel systems apart from the main civil service system, would negotiate for grievance procedures although they have no statutory right of appeal. *See* S.REP. No. 969, 95th Cong., 2d Sess. 110 (1978) U.S.Code Cong. & Admin.News 1978, pp. 2723, 2832 (discussing "other personnel systems ... such as those provided in title 38," relating to veterans' benefits). The excepted service personnel involved in these cases, however, are covered by the main civil service system and not by the provision relating to specialized personnel systems; section 7121(e)(1) thus does not affect our analysis of the remedial structure set forth in title 5.

The CSRA establishes a comprehensive remedial framework governing the civil service. Congress carefully constructed a scheme that would ensure uniformity in personnel decisions and promote efficiency of administration. By authorizing an ancillary approach for NEES employees, the FLRA's position would undermine the structure of the CSRA. We thus grant the petition for review.

*It is so ordered.*

### Supplemental Opinion

SILBERMAN, Circuit Judge, joined by Ruth B. GINSBURG, and BUCKLEY, Circuit Judges:

Petitioner, the FLRA, correctly brings to our attention that we overlooked our earlier opinion in *Griffith v. FLRA,* 842 F.2d 487 (D.C.Cir.1988), holding that the merits of arbitration awards appealed to the FLRA are not further reviewable in *any* federal court unless the arbitrators' decision (and the FLRA's affirmance) is challenged as unconstitutional or falls within the narrow bounds of the *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), exception to statutory provisions. That is so because section 7123(a) provides that:

Any person aggrieved by any final order of the Authority *other than an order under*

(1) Section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title

may institute an action for judicial review of the authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia. 5 U.S.C. § 7123(a) (1982) (emphasis added). *See Griffith,* 842 F.2d at 490–92.

This point, however, weakens rather than strengthens the FLRA's position in this case because it means the federal judiciary presumably would be powerless to ensure that the FLRA, in its review of arbitration awards involving adverse personnel actions taken against excepted service employees, followed the MSPB law that the FLRA conceded ought to apply. Indeed, in light of *Griffith* and the statutory language it interpreted, it is doubtful that we have the power to accept the FLRA's suggestion made at oral argument that, in this case, we hold it bound by MSPB law in reviewing arbitration awards dealing with adverse actions. In that regard, we think the FLRA's counsel was obliged to acknowledge that difficulty and to cite to *Griffith.* We are disappointed that he did not do so.

The FLRA's interpretation would circumvent the congressional design that there be uniform standards governing employee appeals from adverse personnel actions, the class of employee and his union or nonunion status notwithstanding. Congress engineered this result in the CSRA by providing "no matter where [adverse personnel action cases] were initially tried, [they]

would ultimately be reviewed by the Federal Circuit. *Supra*, at 1471. It hardly enhances the FLRA's position to point out that under its interpretation of the Act, its review of arbitration awards of adverse action against excepted service employees would be, for the most part, unreviewable by any court. That would ensure the loss of Federal Circuit supervision—directly or indirectly.