UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

and

National Treasury Employees Union, Intervenor–Respondent.

FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

Nos. 87–1595, 87–1832.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1988.

Decided Oct. 6, 1988.

Peter R. Maier, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., (Nicholas S. Zeppos, William Kanter, of counsel), for petitioner.

Arthur A. Horowitz, Federal Labor Relations Authority, Michael J. McAuley, National Treasury Employees Union, Washington, D.C., for respondent.

Before WOOD, Jr., FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

The Department of Health and Human Services ("HHS") appeals from an order issued by the Federal Labor Relations Authority ("FLRA") requiring HHS to collectively bargain with the National Treasury Employees Union ("NTEU") over a proposal that would subject to binding arbitration all adverse employment action[1] taken with respect to nonpreference excepted service employees.[2]  We reverse.

### I.

### A.

The central issue in this case is whether attorneys at HHS, whom Congress gave limited rights of review over adverse employment decisions, may nonetheless collectively bargain to bring employment-related claims before an independent arbitrator. This appeal requires us to interpret the interplay between two statutory frameworks created as part of the Civil Service Reform Act of 1978 ("CSRA") that "comprehensively overhauled the civil service system." *Lindahl v. OPM,* 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985).  Accordingly, we address these two frameworks in some detail.

The first portion of the CSRA implicated in this dispute addresses the rights and remedies afforded federal employees when adverse employment action is taken against them.  As the Supreme Court recently explained in *United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988), a "leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action" that characterized the prior civil service system.  Under the CSRA, an agency is granted the specific authority necessary to ensure acceptable employee performance and conduct.  *Har-*

---

1.  The phrase "adverse employment action" is used in this opinion to refer to the discharge, suspension, or reduction in grade of a civil service employee by his or her employing agency.

2.  The [Civil Service Reform Act] divides civil service employees into three main classifications that can be generally described as follows: "Senior Executive Service" employees are those who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required. 5 U.S.C. § 3132(a)(2). "Competitive service" employees are all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive service by statute or by statutorily authorized

regulation. § 2102. "Excepted service" personnel are the remainder—those who are in neither the competitive service nor the Senior Executive Service. § 2103....

Within each of the three classifications of employment, the Act accords preferential treatment to certain veterans and their close relatives—so-called "preference eligibles." § 2108.

*United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 670 n. 1, 98 L.Ed.2d 830 (1988). The competitive service generally includes those positions for which examinations are required. 5 U.S.C. § 3304. Excepted service employees typically involve positions for which it is not practicable to hold a competitive examination. In this case the excepted service employees affected by NTEU's proposal are attorneys at HHS.

*rison v. Bowen,* 815 F.2d 1505, 1509 (D.C. Cir.1987). The statute also "provides employees with specific substantive rights with respect to these actions, as well as protection against various types of unfair treatment...." *Id.* These provisions were explained by the Supreme Court in *Fausto* as follows:

> Chapter 43 of the CSRA governs personnel actions based on unacceptable job performance. It applies to both competitive service employees and members of the excepted service. 5 U.S.C. § 4301. It provides that before an employee can be removed or reduced in grade for unacceptable job performance certain procedural protections must be afforded, including 30 days' advance written notice of the proposed action, the right to be represented by an attorney or other representative, a reasonable period of time in which to respond to the charges, and a written decision specifying the instances of unacceptable performance. § 4303(b)(1). *Although Congress extended these protections to nonpreference members of the excepted service, it denied them the right to seek either administrative or judicial review of the agency's final action.* Chapter 43 gives only competitive service employees and preference eligible members of the excepted service the right to appeal the agency's decision to the [Merit Systems Protection Board ("MSPB")] and then to the Federal Circuit. § 4303(e).
>
> Chapter 23 of the CSRA establishes the principles of the merit system of employment, § 2301, and forbids an agency from engaging in certain "prohibited personnel practices," including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers. § 2302. Nonpreference excepted service employees who are not in positions of a confidential or policy-making nature are protected by this chapter, § 2302(a)(2)(B),

and are given the right to file charges of "prohibited personnel practices" with the Office of Special Counsel of the MSPB, whose responsibility it is to investigate the charges and, where appropriate, to seek remedial action from the agency and the MSPB. § 1206.

> Chapter 75 of the Act governs adverse action taken against employees for the "efficiency of the service," which includes action ... based on misconduct. Subchapter I governs minor adverse action (suspension for 14 days or less), §§ 7501–7504, and Subchapter II governs major adverse action (removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less), §§ 7511–7514. In each subchapter, covered employees are given procedural protections similar to those contained in Chapter 43, §§ 7503(b), 7513(b), and *in Subchapter II covered employees are accorded administrative review by the MSPB, followed by judicial review in the Federal Circuit. §§ 7513(d), 7703. The definition of "employee[s]" covered by Subchapter II (major adverse action) specifically includes preference eligibles in the excepted service, § 7511(a)(1)(B), but does not include other members of the excepted service.* The Office of Personnel Management is, however, given authority to extend coverage of Subchapter II to positions in the excepted service that have that status because they have been excluded from the competitive service by OPM regulation. § 7511(c).

*Id.,* 108 S.Ct. at 672–73 (emphasis added).

To summarize, under Chapters 43 and 75 of the CSRA nonpreference excepted service employees are not entitled to have adverse employment action reviewed by the MSPB or the Federal Circuit, although they are entitled to certain procedural safeguards under Chapter 43.[3] In contrast,

---

**3.** It is important to recognize that employees are generally entitled to appeal adverse employment action within their employing agency. Section 4303(a)–(d) specifically requires certain internal agency procedures for covered employees, including those who are within the nonpreference excepted service classification. In addition, under regulations promulgated by the Office of Personnel Management, each agency is required to establish an agency grievance procedure. 5 C.F.R. §§ 771.201, 771.301. Under HHS's procedures, for example, a nonpreference excepted

competitive employees and preference eligible excepted service employees who are removed, suspended for more than 14 days, or are reduced in grade, may appeal the agency's action to the MSPB and then, if necessary, to the Federal Circuit.[4]

Our task is to reconcile these provisions with certain portions of the Federal Service Labor Management Relations Statute ("LMRS"), as amended, 5 U.S.C. §§ 7101–7135, which were enacted as Title VII of the CSRA. The LMRS provides a statutory scheme for collective bargaining between agencies of the federal government in their capacity as employers and labor organizations as bargaining representatives of federal civilian employees.[5] These parties are required "to meet at reasonable times and to consult and bargain in a good faith effort to reach an agreement with respect to the *conditions of employment* affecting [agency] employees...." 5 U.S.C. §§ 7103(a)(12), 7114(a)(4) (emphasis added). The phrase "conditions of employment" in turn is defined to include essentially all "personnel policies, practices and matters ... except ... to the extent such matters are specifically provided for by federal statute." 5 U.S.C. § 7103(a)(14). Disputes regarding the scope of the duty to bargain in good faith are resolved in the first instance by the FLRA. 5 U.S.C. §§ 7105(a)(2)(E), 7117(c)(1).

The LMRS provides that any collective bargaining agreement reached by the parties must provide procedures for the settlement of grievances, including the requirement that "any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency." 5 U.S.C. § 7121(b)(3)(C). "Grievance" is broadly defined to include "any complaint by any employee concerning any matter relating to the employment of the employee." 5 U.S.C. § 7103(a)(9). The negotiated grievance procedure is generally the exclusive procedure for resolving grievances. 5 U.S.C. § 7121(a)(1). One exception to this rule, however, is "matters covered under sections 4303 and 7512 ... which also fall within the coverage of the negotiated grievance procedure." 5 U.S.C. § 7121(e)(1). As previously discussed, § 4303 addresses adverse action based on unacceptable performance and § 7512 enables an agency to deal with employee misconduct. 5 U.S.C. §§ 4303, 7512–13. Under these two sections competitive employees and preference eligible excepted service employees are permitted to appeal adverse employment action taken against them to the MSPB, a remedy unavailable to non-preference excepted service employees. Employees against whom adverse action is taken for matters which fall within both the collective bargaining agreement and the statutory right to appeal to the MSPB are permitted to choose which of these two avenues they wish to pursue: the grievance procedure which culminates in arbitration, or appeal to the MSPB. Thus, at least with respect to competitive and preference eligible excepted service employees, Congress contemplated that the grievance procedure authorized in the LMRS could cover

---

service employee may challenge his or her discharge within the agency. In contrast, NTEU's proposal would allow adjudication of grievances by an arbitrator outside the agency.

The negotiated grievance procedures under the CSRA preempt agency grievance procedures. 5 U.S.C. § 7121(a). HHS points out, however, that, under its position, grievances of excepted service employees concerning adverse employment action are not within the scope of the negotiated grievance procedures and therefore this classification of employees may still resort to the agency procedures. Indeed, HHS asserts that it has been HHS's practice to notify non-preference excepted service employees of their right to invoke the agency grievance procedures to contest adverse employment action. *See generally Harrison v. Bowen*, 815 F.2d 1505 (D.C. Cir.1987).

**4.** It should also be re-emphasized that nonpreference excepted service employees may submit allegations concerning "prohibited personnel practices" to the Office of Special Counsel ("OSC") for investigation. 5 U.S.C. § 2302; *Harrison*, 815 F.2d at 1511. This can ultimately lead to MSPB review should the OSC's investigation prompt OSC's intervention. 5 U.S.C. § 1206(c)(1)(A).

**5.** The parties agree that HHS is an "agency" under the LMRS. 5 U.S.C. § 7103(a)(3).

action which was also within the scope of Chapters 43 and 75.

## B.

It was against this statutory backdrop that NTEU and HHS began negotiating over the terms of a new collective bargaining agreement. On January 23, 1986, NTEU offered a proposal that would have permitted nonpreference excepted service employees to challenge agency action through the grievance and arbitration procedure, including adverse employment action resulting from unsatisfactory work performance or job-related conduct. Specifically, the proposal provided:

The parties agree that the terms and conditions of this agreement, including the grievance procedure article, adverse action article, and arbitration article will apply to excepted service employees.

The effect of NTEU's proposal was that the grievance and arbitration procedures that already covered competitive employees would also govern excepted service employees.

HHS refused to negotiate over this proposal. HHS observed that under the CSRA nonpreference excepted service employees are afforded certain procedural protections under Chapter 43, but are not given the right to appeal adverse employment action to the MSPB. *See* 5 U.S.C. § 4303(a)–(d). Accordingly, HHS argued that NTEU's proposal was not negotiable because by providing for dispute resolution by an arbitrator, it allowed nonpreference excepted service employees a right to contest adverse employment action to a third party. In HHS's view, Congress determined that such a remedy was inappropriate for this classification of employees.

In response to this position, NTEU petitioned FLRA to order HHS to negotiate. 5 U.S.C. § 7117(c). On February 27, 1987, after reviewing written submissions from the parties, FLRA ruled that NTEU's proposal was negotiable and ordered HHS to bargain with respect to it. FLRA first noted that nonpreference excepted service employees are within the LMRS's definition of "employee," although other categories of individuals are specifically excluded. Similarly, FLRA observed that certain subjects were specifically exempted from the negotiated grievance procedures mandated by the LMRS, but that grievances by nonpreference excepted service employees were not. FLRA concluded that "Congress did not intend to exclude excepted service employees by virtue of their status from coverage of the negotiated grievance procedures that it required to be part of every collective bargaining agreement under the [LMRS]." *National Treasury Employees Union and Department of Health and Human Services, Region V, Chicago, Illinois*, 25 F.L.R.A. 1110, 1115 (1987).[6]

Decisions of the FLRA are reviewed in accordance with the Administrative Procedure Act ("APA"). *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 97 n. 7, 104 S.Ct. 439, 444 n. 7, 78 L.Ed.2d 195 (1983). Section 706(2)(A) of the APA provides that a reviewing court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious ... or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has stated that the FLRA is entitled to "considerable deference" when applying the general provisions of the LMRS, *Bureau*, 464 U.S. at 97, 104 S.Ct. at 444, but has cautioned that reviewing courts must not "rubber stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Id.* (quoting *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)). *See also Internal Revenue Service v. Federal Labor Rela-*

---

6. The FLRA also relied on the Federal Circuit's decision in *Fausto v. United States,* 783 F.2d 1020, *petition for rehearing denied,* 791 F.2d 1554 (1986), for the proposition that "the comprehensive remedial scheme of the CSRA did not foreclose the enforcement of rights created under other regulatory and statutory provisions." *National Treasury,* 25 F.L.R.A. at 1110. As discussed *infra,* the Federal Circuit's decision was reversed by the Supreme Court. *Fausto,* 108 S.Ct. 668.

*tions Authority,* 717 F.2d 1174, 1176 (7th Cir.1983) ("while the construction of a statute by the agency charged with administering it is entitled to deference, courts are nevertheless the final authorities on issues of statutory construction") (citation omitted).

## II.

The critical issue in this case is whether Congress intended the rights and remedies set forth in Chapters 43 and 75 to be exclusive or just a statutory minimum which might be supplemented through the collective bargaining process authorized in the LMRS. Section 7117(a)(1) imposes a duty to bargain in good faith, "to the extent not inconsistent with any Federal law...." 5 U.S.C. § 7117(a)(1). Similarly, § 7103(a)(12) specifies in part that collective bargaining means bargaining in good faith with respect to "conditions of employment." 5 U.S.C. § 7103(a)(12). As noted, the phrase "conditions of employment" is defined to include essentially all personnel practices, except "to the extent such matters are specifically provided for by federal statute." 5 U.S.C. § 7103(a)(14). Accordingly, if the remedies afforded to nonpreference excepted service employees in Chapters 43 and 75 are exclusive, NTEU's proposal, which would expand the remedies available to this classification of employees to include appeal to an arbitrator, would be inconsistent with federal law and therefore prohibited.[7]

The essence of the argument advanced by NTEU and FLRA (the "appellees") is that there is nothing inherently inconsistent about a congressional decision to mandate certain minimum procedures in one portion of the CSRA and still permit the parties to negotiate for alternative procedures through collective bargaining. Appellees emphasize that § 7121(e)(1), which gives competitive employees a choice between appealing action that is covered by both the grievance procedure and Chapters 43 and 75 to either the MSPB or an arbitrator, clearly indicates that the two systems are not mutually exclusive. Accordingly, in appellees' view, the fact that nonpreference excepted service employees cannot appeal agency action taken pursuant to Chapters 43 and 75 to the MSPB does not mean that this same action cannot be subject to the parties' grievance and arbitration procedures.[8]

HHS argues that this proves just the opposite point. The agency asserts that by specifically withholding the right to appeal major adverse action to the MSPB, Congress sought to ensure that an agency could take such action with respect to nonpreference excepted service employees without having to defend the action before a third party; a prerogative that is equally undermined by an appeal to an arbitrator as by MSPB's review.

Our analysis of this issue is substantially informed by the Supreme Court's recent decision in *United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Joseph Fausto, a nonpreference excepted service employee with the Department of the Interior Fish and Wildlife Service ("FWS"), was suspended by the FWS for 30 days for unauthorized use of a government vehicle. Because Fausto was a nonpreference excepted service employee, he was not entitled to appeal his suspension to the MSPB. Fausto therefore filed suit in the United States Claims Court to

---

**7.** We note that the legislative history is not very helpful in attempting to resolve this issue. It indicates that nonpreference excepted service employees are not entitled to appeal adverse employment action to the MSPB, but does not explain why. H.R.Rep. No. 95–1403, 95th Cong., 2 Sess. 21–23 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723.

**8.** Appellees also argue that § 7511(c) which authorizes OPM to extend the definition of employee to include nonpreference excepted service employees (thereby permitting them to ap-peal agency action resulting from alleged misconduct to the MSPB and Federal Circuit) indicates that the rights of these employees can be increased by collective bargaining. To the extent that § 7511(c) bears on the issue, we believe it cuts the other way. By reserving this authority to OPM, an agency charged largely with governing federal personnel matters, it seems less likely that Congress intended this same result to be possible through collective bargaining.

contest both his suspension and his entitlement to back pay during the time he was suspended. The Claims Court dismissed the suit, reasoning (as HHS does here) that Chapter 75 of the CSRA contained the exclusive set of remedies available to federal employees. The Federal Circuit reversed, holding that the CSRA did not prevent nonpreference excepted service employees from pursuing traditional avenues of relief available to them.

The Supreme Court rejected the Federal Circuit's position. The Court explained that the CSRA is "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 108 S.Ct. at 672. It then emphasized that the CSRA specifically addressed the rights and remedies available to nonpreference excepted service employees, but did not afford administrative or judicial review for agency action governed by Chapter 75, the type Fausto was contesting. The Court concluded that:

> The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter.

*Id.* at 673.

■ Although *Fausto* does not specifically address the LMRS, its rationale demonstrates that the rights and remedies available to a nonpreference excepted service employee under the CSRA when an agency takes adverse employment action are "a maximum" and therefore are not conditions of employment subject to collective bargaining under the LMRS. FLRA and NTEU seek to distinguish *Fausto* on the grounds that it involved resort to a judicial forum and that unlike the collective bargaining procedures at issue here, the

Back Pay Act at issue in *Fausto* is a statute unrelated to the CSRA.

■ We believe that appellees read the opinion too narrowly. *Fausto* repeatedly emphasized the comprehensive nature of the rights and remedies set forth in Chapter 75 of the CSRA and stated that the decision to withhold MSPB and judicial review from nonpreference excepted service employees was a "manifestation of a considered congressional judgment." *Id.* at 674. Although the asserted right to appeal adverse employment action to an arbitrator arises under another portion of the CSRA, we do not believe this prevents the Supreme Court's reasoning from controlling here. It is true that § 7121(e) contemplates that competitive and preference eligible employees may in certain circumstances appeal to either an arbitrator or the MSPB, but in terms of the type of qualitative review of agency action, resort to an arbitrator does not afford these classifications of employees any additional relief beyond that provided in Chapters 43 and 75. Indeed, § 7121(e) specifically provides that an arbitrator must apply the same standard of review that the MSPB would have used if the employee had appealed to the MSPB instead. In contrast, NTEU's proposal would allow nonpreference excepted service employees to challenge adverse employment action before an arbitrator where there is no right to appeal to the MSPB. The thrust of the *Fausto* opinion is that the delicate balancing between the needs of efficient agency administration and employment protection that is embodied in this framework would be undermined if nonpreference excepted service employees could contest adverse employment action outside the agency. Permitting these employees to challenge such action before an arbitrator would upset the balance that Congress struck in the same manner as Joseph Fausto's attempted resort to the Claims Court. Accordingly, we hold that NTEU's proposal is not negotiable.

Our holding is supported by the District of Columbia Circuit's decision in *United States Department of Justice v. Federal Labor Relations Authority*, 709 F.2d 724

(D.C.Cir.1983). In that case the FLRA, employing substantially the same arguments as it does here, ordered the Immigration and Naturalization Service to bargain over a proposal to bring probationary employees within the grievance/arbitration procedures provided for in the parties' collective bargaining agreement. The District of Columbia Circuit reversed, stating that "[t]he union proposal ... would do precisely what Congress would not" and would "undermine[ ] the scheme Congress envisioned when it excluded probationary employees from Sections 4303 and 7513." *Id.* at 728–29 (footnote omitted). The court specifically rejected FLRA's argument that Congress' failure to extend many of the protections afforded to other classifications of employees in Chapters 43 and 75 to probationary employees did not foreclose the possibility of achieving some of these same protections through collective bargaining. The court reasoned that "[a] grievance/arbitration procedure entails the same type of after-the-fact review and limitation on an agency's decision as do the statutory appeals procedures. It simply substitutes an arbitrator for MSPB review." *Id.* at 729–30.

FLRA and NTEU argue that *Department of Justice* is distinguishable because Congress affirmatively preserved an agency's right to take summary adverse action against probationary employees and further, that this class of employees, unlike nonpreference excepted service employees, was not afforded any protections under Chapter 43. Appellees assert that Congress viewed the ability to summarily terminate probationary employees as essential to efficient operation of the service and that the purposes of probationary employment are unrelated to the purposes of excepted service classification.

We find these distinctions unpersuasive. While Congress did "affirmatively preserve" an agency's right to summarily discharge probationary employees for poor work performance, *Id.* at 729, it also affirmatively enacted specific provisions setting forth certain procedural rights and

remedies to which nonpreference excepted service employees are entitled, but withheld MSPB review. Under the CSRA framework, probationary employees are the least favored in terms of procedural protection, nonpreference excepted service employees are next, with competitive and preference eligible excepted service employees being afforded the most employment protection. *Harrison,* 815 F.2d 1505, 1515 (D.C.Cir.1987). Under Chapter 75 nonpreference excepted service employees are excluded from coverage just like probationary employees. It is just as disruptive of this system to expand the procedural protections available to nonpreference excepted service employees through arbitration as it is for probationary employees. *See also National Treasury Employees Union v. Federal Labor Relations Authority,* 848 F.2d 1273 (D.C.Cir.1988) (holding non-negotiable a proposal which would have permitted probationary employees to contest claims of discrimination through the collective bargaining agreements grievance procedure because Congress already provided a procedure to raise such claims in 42 U.S.C. § 2000e–16(a)). FLRA's decision is REVERSED.[9]

---

**9.** Accordingly, FLRA's cross-petition for enforcement of its order is denied.