# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 12, 2004      Decided December 17, 2004

No. 03-1423

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order of the
Federal Labor Relations Authority

———

*Julie M. Wilson* was on the brief for petitioner. With her on the briefs were *Gregory O'Duden* and *Barbara A. Atkin*.

*David M. Shewchuk*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor. *James F. Blandford*, Attorney, entered an appearance.

Before: SENTELLE, HENDERSON, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: The National Treasury Employees Union ("NTEU") petitions for review of the Federal Labor Relations Authority's ("FLRA") decision dismissing NTEU's unfair labor practice complaint as untimely. Specifically, the FLRA found that the statutory filing period for an unfair labor practice charge challenging the failure to comply with an arbitrator's award begins as soon as the award becomes final. NTEU contends that this interpretation is contrary to the clear language of the statute and thus is due no deference. Because we agree with the NTEU we grant the petition for review.

## I. Background

### A. Statutory Background

This case arises from the Internal Revenue Service's ("IRS") alleged violation of an arbitrator's award for an unfair labor practice. The Federal Labor Relations Authority ("Authority") was created and is governed by the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101-7135, to regulate labor-management relations for the federal government. The FSLMRS provides procedures governing the arbitration of labor-management disputes that ensure that arbitration awards are subject to review and are obeyed once upheld by the Authority.

Once an arbitrator grants an award, parties have a 30-day window to file exceptions with the Authority. 5 U.S.C. § 7122. If no exceptions are filed, the award becomes final and binding at the end of that period. *Id.* As soon as the award is final the agency must take actions required by the award; failure to do so constitutes an unfair labor practice ("ULP"). *Id.*; 5 U.S.C. § 7116(a)(8).

An aggrieved party may make a charge of an unfair labor practice to the General Counsel, who may then issue a complaint against the agency or union for the ULP. 5 U.S.C. § 7118(a)(1). A statute of limitations applies to these charges: "no complaint shall be issued based on any alleged unfair labor practice which occurred more than 6 months before the filing of the charge with the Authority." 5 U.S.C. § 7118(a)(4)(A). This statute of limitations may be tolled if the ULP was not discovered during the six-month period due to concealment. 5 U.S.C. § 7118(a)(4)(B). The Authority also has permitted equitable tolling of the period in unique circumstances where multiple timely charges were made but dismissed or withdrawn for various reasons. *Dep't of the Air Force, HQ 832d Combat Support Group, DPCE Luke Air Force Base, Ariz.*, 24 F.L.R.A. 1021, 1025-26 (1986) ("*Luke AFB*") (citing *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428-429 (1965) (applying equitable tolling where plaintiff had not "slept on his rights")).

## B. Factual Background

The NTEU is the exclusive representative of a nationwide consolidated unit of IRS employees. During fiscal year 1998 the IRS directed certain employees from the surrounding area to report periodically to the Seattle Headquarters, resulting in increased commuting times for these employees. NTEU filed grievances on their behalf seeking compensation, the IRS refused to pay, and the matter proceeded to arbitration. The arbitrator's award sustained the grievance, ordered the IRS to start compensating employees for increased commuting time, and required the IRS to compile a list of employees who had been affected by these assignments for the purpose of assessing the remedy (presumably an award of back-pay). The list was to be due within 45 days of the receipt of the award.

4

*C. Proceedings Below*

The IRS filed exceptions to the award which the Authority denied on August 17, 2001. *Dep't of the Treasury, I.R.S., and Nat'l Treasury Employees Union*, 57 F.L.R.A. 444 (2001). It then filed a motion for reconsideration that was denied on November 27, 2001. *Dep't of the Treasury, I.R.S., and Nat'l Treasury Employees Union*, 57 F.L.R.A. 592 (2001). The NTEU contacted the IRS to determine whether it intended to comply with the award, but the IRS responded that it did not have definite information because the matter was still being reviewed by the Department of the Treasury. In order to obtain a clearer answer, counsel for NTEU wrote a letter to IRS Area Counsel on January 24, 2002 because more than 45 days had elapsed since the motion for reconsideration was denied and the IRS had not yet provided an employee list. The Area Counsel responded in a letter dated January 31, 2002, stating that the agency "does not have to take any action to implement the Arbitrator's award at this time." The NTEU filed a ULP charge on February 21, 2002, charging that the IRS had violated 5 U.S.C. § 7116(a)(1) and (8) by refusing to comply with the award.

The FLRA General Counsel issued a complaint and filed a motion for summary judgment; the IRS cross-moved for summary judgment arguing that the charge was untimely filed under § 7118(a)(4)(A). The Administrative Law Judge ("ALJ") held that the six-month period for filing had begun when the award was final, on August 17, 2001, and therefore had expired on February 17, 2002. *Dep't of the Treasury, I.R.S., and Nat'l Treasury Employees Union*, 59 F.L.R.A. 282, 295 (2003). Because the charge was filed on February 21, 2002 and he found no reason to equitably toll the period, the ALJ held that the charge was untimely filed and dismissed the matter. The Authority affirmed the ALJ's conclusions. *Id.* at 288-89. NTEU

filed this petition for review.

## II. Analysis

Review of the FLRA's interpretation of its own enabling statute is governed by the familiar two-step test of *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Dep't of the Air Force v. FLRA*, 294 F.3d 192, 196 (D.C. Cir. 2002). When Congress has spoken, we are bound by that pronouncement and that ends this Court's inquiry. *Chevron*, 467 U.S. at 842-43. Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. In this case the Authority's interpretation of the statutory filing period for ULP charges runs contrary to the clearly expressed intent of Congress and fails *Chevron* at its first step.

Under § 7118(a)(4), the six-month filing period for ULP charges starts at the time the "alleged unfair labor practice . . . occurred." In this case the alleged ULP consisted of the failure to comply with the arbitrator's award. *See* 5 U.S.C. §§ 7116(a)(8), 7118(a)(4)(A). The plain language of the statute thus requires that the filing period cannot begin at least until there has been a failure to comply with an arbitration award.

The Authority argues that, because the agency has an obligation to comply with an award as soon as it becomes final, 5 U.S.C. § 7122(b), and because the IRS never took the actions mandated by the award, the failure to comply occurred when the award became final on August 17, 2001. This reading confuses the onset of the obligation with the onset of the failure to fulfill that obligation. If an award orders an action that will take place in the future, a party may fail to comply with the award in two ways. First, it may expressly reject its obligation under the

award at any time. Second, it may simply not take the steps ordered by the award, but it cannot be said to have done this at least until the deadline for taking action has passed.

In the case before us, the arbitrator's award imposed two major obligations on the IRS. First, it enjoined the IRS from "failing or refusing to implement [commuting compensation under the collective bargaining agreement] as to covered employees." Nothing on the record indicates whether the IRS complied with this section of the agreement. The second obligation thus forms the basis for the ULP charge: the IRS was required to submit a list of employees affected by the location transfers so that they could be compensated. This list was due on October 1, 2001, 45 days after the award became final. Thus the first opportunity for the IRS to fail to comply with the award was on October 1, when it missed the deadline to submit names to NTEU. It is impossible to find an unfair labor practice occurring before this point because there cannot have been a failure to comply with the award before then. While the IRS arguably could have triggered the limitations period earlier by affirmatively rejecting its obligations under the award, it did not do so until IRS Area Counsel wrote as much to NTEU's counsel on January 31, 2002.

Given the facts of this case, then, the earliest possible date that a ULP can be said to have occurred is October 1, 2001. Because NTEU's charge was filed on February 21, 2002, it was well within the six-month filing period and was timely.

The Authority characterizes NTEU's interpretation of the filing period as a "discovery rule." Under a discovery rule, "a cause of action accrues when the injured party discovers--or in the exercise of due diligence should have discovered--that it has been injured." *Sprint Comm. Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996). NTEU's interpretation is not such a rule.

The period begins running in October not because that is the first time NTEU could have known that the IRS was failing to comply with the award, but because that was the first time the IRS could have failed to comply by inaction.

If we were to accept the Authority's interpretation, we would be left with the absurd situation of charges that could never be filed because the limitations period would expire before they became ripe. If, for example, an arbitrator's award on January 1 required the agency to take action within seven months after the award became final, a charge of inaction would not be ripe until seven months later on August 1. But under the Authority's interpretation the limitations period would start running as soon as the award became final, making the period expire six months later on July 1 –  before the claim became ripe. This is neither supported by the statutory language that requires that a ULP actually *occur* before the limitations period can begin to run, nor is it a workable policy.

### III.  Conclusion

For the reasons given above we grant the petition for review, vacate the decision below, and remand for further proceedings.