# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES CAPITOL POLICE,**
*Petitioner*

**v.**

**OFFICE OF COMPLIANCE,**
*Respondent*

**UNITED STATES CAPITOL POLICE LABOR COMMITTEE,**
*Intervenor*

---

2017-2061

---

Petition for review of a decision of the Board of Directors of the Office of Compliance in No. 16-LM-02 (NG).

- - - - - - - - - - - - - - - - - - - - -

**UNITED STATES CAPITOL POLICE,**
*Respondent*

**v.**

**OFFICE OF COMPLIANCE,**
*Applicant*

**FRATERNAL ORDER OF POLICE, DISTRICT OF COLUMBIA LODGE NO. 1, U.S. CAPITOL POLICE**

**LABOR COMMITTEE,**
*Intervenor*

_____

2018-1504

_____

Petition for enforcement of a decision of the Board of Directors of the Office of Compliance in No. 16-LM-02 (NG).

_____

Decided: November 6, 2018

_____

FREDERICK M. HERRERA, Office of Employment Counsel, United States Capitol Police, Washington, DC, argued for petitioner in 17-2061 and respondent in 18-1504. Also represented by RAFIQUE OMAR ANDERSON, KELLY MARISSA SCINDIAN in 17-2061.

JOHN D. UELMEN, Office of the General Counsel, United States Office of Compliance, Washington, DC, argued for respondent in 17-2061 and applicant in 18-1504. Also represented by JULIA AKINS CLARK, SIMONE JENKINS.

MEGAN KATHLEEN MECHAK, Woodley & McGillivary LLP, Washington, DC, argued for intervenors.

_____

Before DYK, LINN, and TARANTO, *Circuit Judges.*

DYK, *Circuit Judge.*

These appeals involve a negotiability dispute between the U.S. Capitol Police ("Police") and the Fraternal Order of Police, District of Columbia Lodge No. 1 ("Union"). The dispute arose during negotiations for a collective bargain-

ing agreement ("CBA") to replace the parties' current CBA. The Police proposed draft language that changed the existing agreement by excluding employee terminations from the scope of the CBA's grievance and arbitration procedures, and the Union proposed removing the Police's proposed language and adding language to ensure that terminations would continue to be covered by the grievance procedures. The Police refused to negotiate over the Union's proposals. The Office of Compliance Board of Directors ("Compliance Board") found the Union's proposals negotiable and ordered the Police to bargain with the Union.

The Police petitions for review of the Compliance Board's negotiability decision, and the Office of Compliance petitions for enforcement of that decision. We dismiss the Police's petition for lack of jurisdiction, but, applying the Administrative Procedure Act ("APA") standard of review, 5 U.S.C. § 706, we grant the enforcement petition because the Compliance Board's decision is not contrary to law or otherwise invalid.

BACKGROUND

I

The Congressional Accountability Act of 1995 ("CAA") conferred several rights and protections to employees of the legislative branch. In this respect, the CAA was modeled after and incorporated various labor and employment statutes of the executive branch, including portions of the Federal Service Labor-Management Relations Statute ("FSLMRS") of title 5, which governs labor-management relations of executive branch employees. *See* 2 U.S.C. §§ 1302(a), 1351.

Section 1351 of the CAA gives legislative branch employees the right "to engage in collective bargaining with respect to conditions of employment through" their chosen

representative and requires agencies to bargain in good faith. 5 U.S.C. §§ 7102, 7117 (incorporated by 2 U.S.C. § 1351(a)(1)). The CAA does not define "conditions of employment," but provides that "[t]he [Compliance] Board shall, pursuant to section 1384 of this title, issue regulations to implement [§ 1351]," and "the regulations issued . . . shall be the same as substantive regulations promulgated by the Federal Labor Relations Authority [("FLRA")] to implement the statutory provisions referred to in [§ 1351(a)]," with some exceptions. 2 U.S.C. § 1351(d).

The Compliance Board promulgated regulations ("Office of Compliance Regs.") under § 1351(d). *See* 142 Cong. Rec. 16983–17001 (1996) (publishing the Office of Compliance Regs.); H.R. Res. 504, 104th Cong. (1996) (approving the Office of Compliance Regs.); S. Res. 304, 104th Cong. (1996) (same). The regulations tracked the FSLMRS language in 5 U.S.C. § 7103(a)(14), defining "conditions of employment" as "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions, except that such term does not include policies, practices, and matters . . . [t]o the extent such matters are specifically provided for by Federal statute." Office of Compliance Regs. § 2421.3(m).

The CAA further requires agencies to bargain in good faith over CBA proposals concerning conditions of employment "to the extent not inconsistent with Federal law." 5 U.S.C. § 7117 (incorporated by 2 U.S.C. § 1351(a)(1)). That is, negotiation is not required when the proposed language for the CBA would be "inconsistent with Federal law." *Id.*

A negotiability dispute arises when a legislative branch agency alleges that it has no duty to bargain over a matter, for example, as in this case, because the pro-

posal is inconsistent with federal law. When that happens, a union may either file a negotiability petition directly with the Compliance Board, *id.* § 1351(c)(1), or charge the agency with an unfair labor practice, which the Compliance Board's General Counsel investigates, *id.* § 1351(c)(2). If the General Counsel concludes the charge states an unfair labor practice, then the General Counsel may file a complaint with the Office of Compliance. *Id.*

## II

The parties' employment relationship here is governed by a CBA that was set to expire in 2013, but remains in effect until the parties negotiate a successor CBA. The current CBA provides procedures for the settlement of grievances and lists fifteen "matters [that] are excluded from coverage of this grievance procedure." J.A. 88–89.[1] Terminations of employees is not one of those matters. During negotiations for a successor CBA, the Police presented the Union with draft language that would add employee terminations to the list of matters excluded from the scope of the grievance procedures. The Police's proposed additions are underlined below.

Section 32.03:

The following matters are excluded from coverage of this grievance procedure:

***

J.   Policies, decisions, or directives of Congressional authorities and entities, <u>including approving of terminations of employees by the Capitol Police Board</u>; provided that the impact and im-

---

[1]   Citations to the record are to the joint appendix ("J.A.") in No. 2017-2061.

plementation of those policies by the Department will be negotiable to the extent permitted by law;

\*\*\*

P.  Any the [sic] termination of employment of a bargaining unit employee.

J.A. 196.

The Union proposed removing those additions.  The Union also proposed including language in section 32.12's arbitration procedures to "ensure that terminations of bargaining unit employees are covered by the grievance and arbitration procedure and set the timelines for grieving such removals."  J.A. 14.  The Union's proposed additions are underlined below.

Section 32.12:

The Union may, within thirty (30) days following receipt of the Chief's, or designee's, final decision, notify the Chief of Police by facsimile that it desires the matter to be submitted to arbitration. For the purposes of termination of employment, the date of the final decision is the date the employee is removed from [Police] payroll . . . . In cases where the Chief determines that removal is an appropriate penalty under the circumstances, the Chief shall notify the employee as soon as possible of this determination.  However, the disciplinary removal shall not be ripe for arbitration until the day after the employee is removed from the Department's payroll.

J.A. 200.  The Police contended that the Union's proposals were nonnegotiable (i.e., that the Police need not negotiate with respect to those proposals) and refused to negotiate with the Union.  The Union elected to file a negotiability petition with the Compliance Board.

III

Before the Compliance Board, the Police argued that the proposals were "specifically provided for by" the U.S. Capitol Police Technical Corrections Act of 2009 ("TCA") and thus, were not "conditions of employment." This was so because the TCA amended the CAA to provide the Capitol Police Board ("Police Board") with review and approval of employee termination recommendations, and the Police Board construed those amendments as making Police Board decisions final and not reviewable. Additionally, even if the proposals were considered conditions of employment, the Police contended that the proposals would be inconsistent with federal law and therefore nonnegotiable. The Police only raises the inconsistent with federal law issue on review in this court.

The Compliance Board did not refer the petition to a hearing officer, and no party requested a hearing before a hearing officer. The Compliance Board then decided the matter in the first instance. It concluded that the Union's proposals involved negotiable conditions of employment and were not "specifically provided for" by the TCA or inconsistent with federal law. It stated that the TCA does not provide the Police Board with the sole and exclusive authority regarding terminations, and nothing in the TCA "states that termination decisions approved by the [Police Board] are not subject to arbitration." J.A. 9. Thus, the Compliance Board ordered the Police to bargain with the Union over the proposals. In No. 2017-2061, the Police petitions for review of the Compliance Board's decision.

In the meantime, the Union attempted to bargain with the Police over its proposals that the Compliance Board found negotiable. The Police refused to negotiate with the Union while its petition for review was pending. The Police does not dispute that it has not complied with the bargaining order. In No. 2018-1504, the Office of

Compliance seeks an enforcement order compelling the Police to bargain.

DISCUSSION

I. Jurisdiction

The Police's petition for review is the first of its kind before this court. We first must determine whether this court has jurisdiction over the Police's petition for review of the Compliance Board's negotiability decision. Section 1410 of title 2 provides that "[e]xcept as expressly authorized by sections 1407 [and other sections not relevant to this appeal], the compliance or noncompliance with the provisions of this chapter and any action taken pursuant to this chapter shall not be subject to judicial review." However, the Police contends this court has jurisdiction under 2 U.S.C. § 1407(a)(1)(D).[2] That section provides this court with jurisdiction "over any proceeding commenced by a petition of . . . the General Counsel or a respondent before the [Compliance] Board who files a petition [for judicial review] under section 1351(c)(3) of this title." *Id.* (emphasis added). Section 1351(c)(3), in turn, states: "[T]he General Counsel or the respondent to the complaint, if aggrieved by a final decision of the [Compliance] Board under paragraph (1) or (2) of this

---

[2]    The Police originally contended that this court also has jurisdiction under 2 U.S.C. § 1407(a)(1)(A), which provides: "The United States Court of Appeals for the Federal Circuit shall have jurisdiction over any proceeding commenced by a petition of – (A) a party aggrieved by a final decision of the [Compliance] Board under section 1406(e) of this title in cases arising under part A of subchapter II . . . ." At oral argument, the Police conceded that section does not provide the court with jurisdiction over its petition. We agree because the Police's case arises under part D, not part A, of subchapter II.

subsection, may file a petition for judicial review . . . ." 2 U.S.C. § 1351(c)(3) (emphasis added).

The Police essentially contends that it is a respondent before the Compliance Board (under § 1407(a)(1)(D)), and that it is also a respondent to a "complaint" (under § 1351(c)(3)) because a respondent to a negotiability "petition" is a respondent to a "complaint." The Office of Compliance argues, on the other hand, that this court does not have jurisdiction because the "complaint" in § 1351(c)(3) refers only to an unfair labor practice complaint filed by the Compliance Board's General Counsel under paragraph (2). Because the Police was a respondent to a negotiability "petition" filed by the Union and not a respondent to an unfair labor practice "complaint" filed by the Compliance Board's General Counsel, the Office of Compliance contends that this court lacks jurisdiction.

For several reasons, we think the Police's argument is not correct. Our decision in *Morris v. Office of Compliance*, 608 F.3d 1344 (Fed. Cir. 2010), rejected that very position. In *Morris*, a police officer sought review of a Compliance Board decision denying exceptions to an arbitrator's decision. 608 F.3d at 1345–46. We held that this court did not have jurisdiction over the officer's petition under § 1351(c)(3) since the officer was neither the Compliance Board's General Counsel nor a respondent to an unfair labor practice "complaint." *Id.* at 1347. *Morris* stated that "the respondent to the complaint" in § 1351(c)(3) is "the respondent to the complaint alleging an unfair labor practice." 608 F.3d at 1347 & n.1 (alteration omitted). While it is true that *Morris* came up in a different context, and the statement is arguably dictum, we think that *Morris*'s construction of the statute is correct.

The CAA, which incorporated provisions of the FSLMRS, carefully distinguishes between a "complaint"

and a negotiability "petition."  *See* 2 U.S.C. §§ 1351(c)(1)–(2) (incorporating 5 U.S.C. § 7117, which provides procedures for the filing of a negotiability "petition," and 5 U.S.C. § 7118, which provides procedures for the filing of an unfair labor practice "complaint").  The Office of Compliance's regulations retain this distinction.  *Compare* Office of Compliance Regs. § 2424, *with* Office of Compliance Regs. § 2423.  This strongly suggests that a "complaint" does not include a "petition."

So too, while the CAA incorporated many of the provisions of the FSLMRS, Congress did not incorporate the FSLMRS's judicial review provision and enacted a significantly different judicial review provision for legislative employees.  For executive branch employees, Congress provided that "[a]ny person aggrieved by any final order of the [FLRA]" may obtain judicial review except those orders involving an appropriate unit determination or arbitration awards not involving unfair labor practices.  5 U.S.C. § 7123(a).  Congress did not include the "any person aggrieved" language in the CAA.  Rather, Congress restricted the right of judicial review to "the [Compliance Board's] General Counsel or the respondent to the complaint."  2 U.S.C. § 1351(c)(3).  And this departure from the FSLMRS was clearly deliberate since early versions of the CAA included language giving the right of judicial review to "any person aggrieved," and that language was deleted.  *See, e.g.*, S. Rep. No. 103-397, at 24 (1994), reprinted in U.S.C.C.A.N.

Significantly too, the effect of our decision is not to deny judicial review of the Compliance Board's decision because the Police will be able to trigger judicial review by failing to comply with the decision, as it has done here, and forcing the Office of Compliance to bring an enforcement action.  And as discussed below, that judicial review is full judicial review under the APA.

The Police has no good answers as to why these considerations do not confirm the correctness of *Morris's* construction. Its principal argument is that § 1351(c)(3)'s reference to "a final decision of the [Compliance] Board under paragraph (1) <u>or</u> (2) of this subsection" supports judicial review. We do not agree. Paragraph (2) sheds no light on whether the reference to a "complaint" includes a negotiability "petition." It simply provides that "the [Board's] General Counsel shall exercise the authorities of the General Counsel of the [FLRA] under section[] . . . 7118 of title 5" with respect to unfair labor practice complaints. 2 U.S.C. § 1351(c)(2). Nor does the reference to paragraph (1). Paragraph (1) incorporates provisions that refer both to a negotiability "petition," 5 U.S.C. § 7117, and an unfair labor practice "complaint," 5 U.S.C. § 7118. The statute's reference to "paragraph (1)," thus, does not suggest that everything in paragraph (1) is reviewable. The statute only provides for judicial review of matters set forth in paragraph (1) when review is sought by "the General Counsel or the respondent to the complaint."[3]

We thus conclude that § 1351(c)(3), defining the right to judicial review under the CAA, makes clear that only the Compliance Board's General Counsel and the respondent to an unfair labor practice complaint are authorized to petition this court for judicial review, and

---

[3] The Police also contends that had the Compliance Board referred the matter to a hearing officer, as Police argues is required by the statute, it would have been a respondent to the "complaint" because "[h]earing officers can only adjudicate complaints." Petitioner's Reply Br. at 3–4. We do not see how referring a negotiability petition to a hearing officer would transform a petition into a complaint. In any event, as we discuss below, the Compliance Board was not required to refer a negotiability petition to a hearing officer.

therefore we only have jurisdiction over those petitions under § 1407(a)(1)(D). Because the Police is neither the General Counsel nor a respondent to an unfair labor practice complaint, there is no jurisdiction over the Police's petition for review. We therefore dismiss the Police's petition for lack of jurisdiction.

## II. Standard of Review

Unlike the Police's petition for review, the CAA explicitly provides this court with jurisdiction over the Office of Compliance's enforcement action. Section § 1407(a)(2) of title 2 provides:

> The United States Court of Appeals for the Federal Circuit shall have jurisdiction over any petition of the General Counsel, filed in the name of the Office and at the direction of the [Compliance] Board, to enforce a final decision under section 1405(g) or 1406(e) of this title with respect to a violation of part A, B, C, or D of subchapter II.

Both parties agree this is "a final decision under section 1405(g) or 1406(e)." But the CAA is silent on the scope or standard for our review of enforcement actions. *See* 2 U.S.C. § 1407(d).[4]

---

[4]    Congress did provide a standard of review for proceedings under § 1407(a)(1) dealing with petitions for judicial review of certain final decisions of the Compliance Board:

> To the extent necessary for decision in a proceeding commenced under subsection (a)(1) of this section and when presented, the court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall

With respect to agencies subject to the APA, the APA standard generally governs. "[A] reviewing court must apply the APA's court/agency review standards in the absence of an exception." *Dickinson v. Zurko*, 527 U.S. 150, 154 (1999).[5] However, the Office of Compliance is a

---

set aside a final decision of the [Compliance] Board if it is determined that the decision was—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(2) not made consistent with required procedures; or

(3) unsupported by substantial evidence.

2 U.S.C. § 1407(d). This is essentially identical to the APA standard. *See* 5 U.S.C. § 706. Enforcement actions are commenced under subsection (a)(2), not subsection (a)(1).

[5] Other circuits have recognized that the APA's standard of review is the default standard. *See, e.g.*, *Chu v. U.S. Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1250 (9th Cir. 2016) ("Where Congress does not specify a standard of review, an agency's factual findings are reviewed for substantial evidence under the Administrative Procedure Act, 5 U.S.C. § 706."); *Pattison Sand Co., LLC v. Fed. Mine Safety & Health Review Comm'n*, 688 F.3d 507, 513 (8th Cir. 2012) ("This court has previously recognized that the APA's arbitrary and capricious standard should be used if a statute does not specify a standard of review for an agency's nonfactual determinations."); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1193–94 (9th Cir. 2000) ("*Dickinson* . . . mean[s] that § 706 of the APA functions as a default judicial review standard."); *Certified Color Mfrs. Ass'n v. Mathews*, 543 F.2d 284, 292–93 (D.C. Cir. 1976) ("The

legislative branch agency and is not directly subject to the APA. *See* 2 U.S.C. § 1381. Various courts have recognized that the APA is not directly applicable to agencies in the legislative or judicial branch, in holding that there is no right to judicial review of legislative or judicial branch agency action under the APA. *See, e.g.*, *United States v. Johnson*, 703 F.3d 464, 467–68 (8th Cir. 2013); *United States v. Tercero*, 734 F.3d 979, 984 (9th Cir. 2013); *Ethnic Emps. of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985). But those cases have not addressed the question of whether, when judicial review is provided, legislative or judicial branch agency action should be governed by the APA standard of review when the statute fails to specify a standard. We think the APA standard functions as a default rule in this context, even though the APA is not directly applicable.

As the legislative history of the APA discloses, the APA essentially adopted the common law standard for review of agency action.[6] "[W]here a common-law principle is well established . . . courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (quotation marks omitted); *see also Figueroa v. Sec'y of Health & Human*

Transitional Provisions are silent as to the scope of review of agency action such as is involved here . . . . Accordingly, the appropriate standard for review . . . is that provided by . . . the Administrative Procedure Act.").

[6] *See* S. Rep. No. 79-752, at 44–45 (1945) ("Section 10(e) [of the APA (i.e., 5 U.S.C. § 706)] . . . declares the existing law concerning the scope of judicial review."); 79 Cong. Rec. 2163 (1946) ("The drafting committee states this subsection does not attempt to expand the scope of judicial review, nor reduce it directly by implication.").

*Servs.*, 715 F.3d 1314, 1318–19 (Fed. Cir. 2013). Since the common law standard is the same as the APA standard, we can assume that statutes that provide for judicial review of legislative and judicial branch agencies have adopted the common law standard, that is, the APA standard, absent evidence of contrary intent. The legislation here—the CAA—was enacted in 1995, and we read the statute in light of this background principle to adopt the APA standard of review.

The Compliance Office argues that the standard in *Leedom v. Kyne*, 358 U.S. 184 (1958), instead applies, and the court should only review the Compliance Board's decision to determine whether the Compliance Board exceeded its statutory authority or plainly violated an unambiguous or mandatory provision of the CAA. In this connection, the Compliance Office relies on cases applying this standard to review a narrow category of FLRA decisions involving arbitration awards under the FSLMRS.[7] *See U.S. Dep't of Homeland Sec. v. Fed. Labor Relations Auth.*, 784 F.3d 821, 823 (D.C. Cir. 2015); *Am. Fed'n of Gov't Emps., Local 1617 v. Fed. Labor Relations Auth.*, 103 F. App'x 802, 806 (5th Cir. 2004). But the *Leedom* standard only applies where the statute does not provide for judicial review of agency action or other decision. 358 U.S. at 188–89. That is not the case here since the statute specifically provides for judicial review in the context of enforcement proceedings, albeit not on direct review of Compliance Board decisions.

Nor is this a situation in which either of the APA exceptions applies. The APA judicial review provisions

---

[7]    The FSLMRS provides for judicial review of FLRA final decisions "other than an order . . . involving an award by an arbitrator, unless the order involves an unfair labor practice." 5 U.S.C. § 7123(a).

apply to agency actions "except to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). "[T]he [Compliance Board's] decision here does not fall within the exception for action 'committed to agency discretion'" since this is not one of "those rare instances where [a] 'statute[] [is] drawn in such broad terms that . . . there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1970), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (quoting S. Rep. No. 752, at 26 (1945)). There is also no basis for finding the first exception applies because there is no statute precluding judicial review. Instead, § 1407(a)(2) squarely provides for judicial review.

The Office of Compliance argues there is a negative inference from the language of 2 U.S.C. § 1407(d), which essentially incorporates the APA standard, but applies only to matters under § 1407(a)(1), and fails to include matters under § 1407(a)(2). *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452–53 (2002). The language of this section appears in footnote 4 above. But the legislative history, in describing the bill that was enacted, confirms that Congress intended the APA standard to apply both to proceedings brought under § 1407(a)(1) and § 1407(a)(2). *See* 141 Cong. Rec. 874 (1995). Specifically, the legislative history states:

> Section 407—Judicial Review of Board Decisions and Enforcement

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction over any proceeding commenced by a petition of . . . the general counsel or a respondent who files a petition under section 220(c)(3) [(i.e., 2 U.S.C. § 1351(c)(3))]. The same court shall also have exclusive jurisdiction over any petition of the general counsel filed in the name of the Office and at

> the direction of the Board, to enforce a final decision under section 405(g) or 406(e) . . . . <u>The Standard of review in proceedings under this section is the standard that applies under the administrative procedures [sic] act</u>, namely, that the court shall set aside a final decision of the [Compliance] Board only if it determines that the decision was arbitrary, capricious, and [sic] abuse of direction, or otherwise not consistent with law; not made consistent with required procedures; or unsupported by substantial evidence.

*Id.* (emphasis added). It does not suggest that the failure to specifically adopt the APA standard for § 1407(a)(2) proceedings was anything but inadvertent.

As the Supreme Court has explained:

> The force of any negative implication . . . depends on context. We have long held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it, . . . and that the canon can be overcome by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion.

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (quotation marks omitted). The legislative history provides similar indications here. Notably, other courts have held that reference to the APA standard in one section cannot rebut the presumption that the APA standard applies to other judicial review provisions.[8]

---

[8] *See, e.g.*, *Chu*, 823 F.3d at 1249–50 (applying APA standard where the statute was silent as to the standard of review for one provision of the statute, even though other parts of the statute specified that courts of appeals

We thus hold that the APA standard of review governs enforcement actions brought under § 1407(a)(2). We will grant the Office of Compliance's enforcement action unless the Compliance Board's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by law," or "unsupported by substantial evidence." 5 U.S.C. § 706.

### III. Hearings

Turning to the merits of the enforcement action, the Police first argues that the Compliance Board failed to observe the procedures required by the CAA when it did not refer the negotiability petition to a hearing officer, and instead, decided the negotiability petition in the first instance. The Police contends this was error.

The statute provides:

> For purposes of this section and except as otherwise provided in this section, the [Compliance] Board shall exercise the authorities of the Federal Labor Relations Authority under sections 7105, 7111, 7112, 7113, 7115, 7117, 7118, and 7122 of title 5 . . . . For purposes of this section, any petition or other submission that, under chapter 71 of title 5, would be submitted to the Federal Labor Relations Authority shall, if brought under this

---

should review agency determinations in accordance with the APA standard); *Public Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 196 (D.C. Cir. 1993) (applying APA standard to review the FAA's nonfactual matters where the statute provided that findings of fact were reviewed under the "substantial evidence" standard, but was "silen[t] as to the standard for reviewing nonfactual matters").

section, be submitted to the [Compliance] Board. <u>The [Compliance] Board shall refer any matter under this paragraph to a hearing officer for decision pursuant to subsections (b) through (h) of section 1405 of this title</u>, subject to review by the [Compliance] Board pursuant to section 1406 of this title.

2 U.S.C. § 1351(c)(1) (emphasis added). The Police argues that the language "shall refer any matter under this paragraph to a hearing officer" required the Compliance Board to refer the Union's negotiability petition to a hearing officer.

To be sure, "[u]se of the word 'shall' in a statute can indicate a mandatory compulsion which, if not followed, negates action otherwise authorized by the statute." *Hitachi Home Elecs. (Am.), Inc. v. United States*, 661 F.3d 1343, 1353 (Fed. Cir. 2011) (citing *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)). But the quoted provision, § 1351(c)(1), is susceptible to two different meanings. It could mean in <u>every</u> matter the Compliance Board is required to refer the matter to a hearing officer; or it could mean <u>when a hearing is required by other provisions of the statute</u>, the Compliance Board is required to refer the matter to a hearing officer.

In interpreting this provision of the CAA, we have to take account of the overall structure of the statute. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–34 (2000) ("[A] reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context."); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959)

("[O]ur task is to fit, if possible, all parts into a harmonious whole."); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory . . . . [T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

Here, Congress incorporated two different provisions of the FSLMRS into § 1351(c)(1) by authorizing the Compliance Board "to exercise the authorities of the [FLRA] under sections . . . 7117 [and] 7118." Section 7117 provides that, after a union "fil[es] a petition with the [FLRA]" raising a negotiability dispute, "[a] hearing <u>may</u> be held, in the discretion of the [FLRA], before a determination is made under this subsection." 5 U.S.C. §§ 7117(c)(2)(A), 7117(c)(5) (emphasis added). The D.C. Circuit has confirmed that such hearings are discretionary. *See Nat'l Fed'n of Fed. Emps., Local 1167 v. Fed. Labor Relations Auth.*, 681 F.2d 886, 891 (D.C. Cir. 1982) (citing 5 U.S.C. § 7117(c)(5)) ("The FLRA has the statutory power to hold a hearing to aid in its decision, but such hearings are discretionary."). In contrast, § 7118 provides that, after the General Counsel investigates a charge of unfair labor practice and issues a "complaint," "[t]he [FLRA] . . . <u>shall</u> conduct a hearing on the complaint." 5 U.S.C. §§ 7118(a)(1), 7118(a)(6) (emphasis added).

We think that, having incorporated these provisions into the CAA, Congress intended to give the Compliance Board the same authority as the FLRA. For negotiability petitions, that means the Compliance Board has discretion whether to hold a hearing before rendering a decision and a hearing is not required, just as the FLRA has discretion under § 7117 of title 5. In light of that, § 1351(c)(1) is best read as meaning that: "[If a hearing is required pursuant to the above sections of title 5,] [t]he

[Compliance] Board shall refer any matter under this paragraph to a hearing officer for decision pursuant to subsections (b) through (h) of section 1405 of this title, subject to review by the [Compliance] Board pursuant to section 1406 of this title." 2 U.S.C. § 1351(c)(1).[9] Any other interpretation under § 1351(c)(1) would read out the statutory provision incorporating § 7117 of title 5, making hearings discretionary as to negotiability petitions. Since hearings are discretionary, the opportunity for a hearing is lost if not timely requested. Here, a hearing was not timely requested by the Police.

We conclude that the Compliance Board was not required to refer the matter to a hearing officer, and it was not error for the Compliance Board to decide the Union's negotiability petition in the first instance.

## IV. Negotiability

Finally, the Police argues that this court should deny the enforcement action because the Compliance Board erred in finding the Union's proposals were "not incon-

---

[9] Given that we find the statute unambiguous, we do not reach the question of whether *Chevron* deference is due to the Compliance Board's interpretation of the statute. In any event, the Compliance Board's interpretation is consistent with our construction. *See* Office of Compliance Regs. § 2424.9 ("A hearing may be held, in the discretion of the [Compliance] Board, before a determination is made under 5 U.S.C. §§ 7117(b) or (c), as applied by the CAA."). And in adopting its regulations, the Compliance Board discussed at length why the statutory structure and legislative history shows that hearings are not mandatory in matters not involving a charge of unfair labor practice. *See* 142 Cong. Rec. 16983–94 (1996).

sistent with Federal law."[10]  5 U.S.C. § 7117(a)(1) (incorporated by 2 U.S.C. § 1351(a)(1)).

As explained above, the Compliance Board adopted the FSLMRS's broad definition of "conditions of employment."  Office of Compliance Regs. § 2421.3(m).  In general, the comprehensive nature of "conditions of employment" would include employee terminations.  However, the CAA incorporated 5 U.S.C. § 7117(a)(1), which does not require negotiation when proposals are contrary to law.[11]  The Police makes two arguments as to

[10]  As noted above, the Police originally contended that the proposals were also "specifically provided for by Federal statute," and thus not "conditions of employment" under 5 U.S.C. § 7117(d) (incorporated by 2 U.S.C. § 1351(a)), because the TCA gives the Police Board the sole authority to review and approve of termination recommendations and those decisions are final.  At oral argument, the Police abandoned that position and proceeded only with its argument that the proposals were "inconsistent with Federal law."  We agree that this is not a situation, under *Fort Stewart Schools v. Federal Labor Relations Authority*, 495 U.S. 641 (1990), in which the proposals were "specifically provided for by Federal statute."

[11]  *See U.S. Dep't of Homeland Sec. v. Fed. Labor Relations Auth.*, 751 F.3d 665, 672 (D.C. Cir. 2014) (Proposals found nonnegotiable "which concern[ed] investigations conducted by the Inspector General" and "r[a]n afoul of the Inspector General Act's mandate that it is the Inspector General who has the authority to 'conduct, supervise, and coordinate audits and investigations' relating to the [agency]." (citation omitted)); *Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 250 F.3d 778, 780–81 (D.C. Cir. 2001) ("[P]roposals that would have allowed for the assignment of technicians to Wage

why the Union's proposals were contrary to law. The Police first argues that the TCA's amendments to the CAA removed the Police Board as an employing office, provided for Police Board review of employee terminations, and made Police Board decisions final and not reviewable. Thus, the Police contends that the Union's proposals permitting arbitrator review of termination decisions are inconsistent with the provisions for Police Board review.

We disagree with the Police's construction of the TCA. The purpose of the TCA was "[t]o make technical corrections to the laws affecting certain administrative authorities of the [Police], and for other purposes." Pub. L. No. 111-145, 124 Stat. 49 (2010) (codified in scattered sections of 2 U.S.C.). Prior to the TCA, the Police Board was listed as an employing office under the CAA. 2 U.S.C. § 1301(9)(D) (1994). The TCA, *inter alia*, removed the Police Board as an employing office and substituted the Police. 2 U.S.C. § 1301(9)(D). The TCA also created a "Special rule for termination" ("Special Rule"), which provides:

> The Chief [of the Police] may terminate an officer, member, or employee only after the Chief has pro-

---

Leader positions without restriction based on the technicians' military grade" were held to be nonnegotiable and inconsistent with section of the National Guard Technician Act, "requiring civilian technicians to '[h]old the military grade specified by the Secretary.'"); *U.S. Dep't of Def. v. Fed. Labor Relations Auth.* 964 F.2d 26, 27 (D.C. Cir. 1992) ("[P]roposal that would limit the manner in which a federal agency responds to requests for information under the Freedom of Information Act ('FOIA') [wa]s inconsistent with federal law and therefore nonnegotiable.").

vided notice of the termination to the Capitol Police Board (in such manner as the [Police] Board may from time to time require) and the [Police] Board has approved the termination . . . .

2 U.S.C. § 1907(e)(1)(B). Following passage of the TCA, the Police Board purportedly issued an "order" interpreting the statute as follows:

[U]nder 2 U.S.C. § 1907(e) authorizing the Capitol Police Board to approve termination actions forwarded by the Chief of Police, the Capitol Police Board hereby orders that any termination approved by the Capitol Police Board is a final decision of the Capitol Police Board and Capitol Police Board approval decision [sic] are not reviewable or appealable in any manner. Notwithstanding any Office of Compliance Board of Directors decision, which has no applicability to Capitol Police Board's approval of termination determinations, the United States Capitol Police is directed to comply with the Capitol Police Board's approval of all termination decision [sic] by the Capitol Police Board.

J.A. 236.

The Police argues that statute as interpreted by the "order" bars review by an arbitrator of a termination decision by the Police Board, and that we are required to follow the Police Board's interpretation of the statute as precluding review of Police Board decisions. It urges that the *Chevron* framework applies, that the statute is ambiguous, and thus deference is owed to the Police Board's "order" interpreting the statute (i.e., Special Rule). *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). But here, we are not concerned with an arbitrator's review of a decision of the Police Board, but with an arbitrator's review of a decision

of the Chief of the Police. The section of the TCA where the Special Rule is found is titled "Administrative Authority of the <u>Chief</u> of the Capitol Police." TCA, § 2, 124 Stat. at 49 (emphasis added). That section focuses on the Chief's, not the Police Board's, authority as the head of the Police to "appoint, hire, suspend with or without pay, discipline, <u>discharge</u>, and set the terms, conditions and privileges of employment of employees of the Capitol Police, subject to and in accordance with applicable laws and regulations." 2 U.S.C. § 1907(e)(1)(A) (emphasis added). Even under the Special Rule, Congress did not make termination a decision of the Police Board, but merely required that the Police Board ratify the decision. The statute made the termination decision a decision of the Chief, and made that decision the final decision. The Union's proposals, thus, would subject a termination decision made by the Chief as head of the Police to the grievance and arbitration procedures outlined in the CBA. It would not subject the Police Board's decision to review under the grievance procedures.[12] Whatever authority the Police may have to preclude review of Police Board decisions, the statute cannot be interpreted to preclude review of the Chief's decisions or to make a termination decision a decision of the Police Board rather than a decision of the Chief.[13] Thus, unlike the cases on which

---

[12] The Police also argues that the requirement for grievance and arbitration procedures in the statute is only applicable to employing offices, and the Police Board is not an employing office. But as discussed, it is not the decision of the Police Board that would be reviewed, but the decision of the Chief.

[13] The Police cites cases in which proposals that would have provided for arbitrator review of dismissal and disciplinary decisions of the state adjutant general were found inconsistent with the Natural Guard Techni-

the Police relies, there is no statutory provision preclud-ing review of the Chief's termination decisions.

The rest of the CAA underscores that Congress did not intend to preclude review of termination decisions made by the Chief of the Police. Other sections of the CAA show that Congress knew how to give the Chief unreviewable authority over a matter when it intended, and termination decisions was not one of them. For example, 2 U.S.C. § 1931 gives the Chief the authority to "establish and determine . . . positions in salary classes of employees of the Capitol Police to be designated as em-ployees with specialty assignments or proficiencies," *id.* § 1931(a), and "[a]ny determination under section (a) shall not be appealable or reviewable in any manner," *id.* § 1931(d). *See also id.* §§ 1927(a)(1), 1927(a)(6) (similar language in provision making "[a]ny determination of the Chief under this subsection . . . not . . . appealable or reviewable in any manner"). "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress

---

cian Act ("Technician Act") and nonnegotiable. *See, e.g.,* *Cal. Nat'l Guard v. Fed. Labor Relations Auth.*, 697 F.2d 874, 879 (9th Cir. 1983); *N.J. Air Nat'l Guard, 177th Fighter Interceptor Grp. & Dep't of Def. v. Fed. Labor Relations Auth.*, 677 F.2d 276, 279–80 (3d Cir. 1982). Those cases involved statutory provisions of the Techni-cian Act that provided the adjutant general with the sole and final discretion to discipline employees "[n]otwithstanding any other provision of law" and pre-cluded appeal of disciplinary action extending beyond the adjutant general. 32 U.S.C. § 709(e) (1982). The CAA, unlike the Technician Act, does not have a statutory provision giving the Chief the sole and final authority over terminations "[n]otwithstanding any other provision of law" or a provision precluding review of terminations.

acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). The fact that Congress made decisions of the Chief "not . . . appealable or reviewable in any manner" in certain parts of the CAA underscores that we must refrain from reading that phrase into the Special Rule when Congress has left it out. So too, 2 U.S.C. § 1351(a)(1), incorporating 5 U.S.C. § 7121(c) and defining the subjects excluded from any negotiated grievance procedure, excludes from negotiation "a suspension or removal" under 5 U.S.C. § 7532 involving "interests of national security," suggesting that other suspensions or removals are subject to negotiation.[14]

Apart from the TCA, the Police argues that the proposals were "inconsistent with Federal law" because legislative employees lack rights, under title 5, to appeal adverse personnel actions to the Merit Systems Protection Board ("MSPB"), which implies that review through a grievance procedure is also precluded. "Because Congress did not afford [Police] employees the statutory right to

---

[14] The Police relies on *Department of the Air Force, Luke Air Force Base v. Federal Labor Relations Authority*, 844 F.3d 957, 961, 964 (D.C. Cir. 2016) (quoting *Brown v. Glines*, 444 U.S. 348, 360 (1980)), which noted that, "'[i]n construing a statute that touches on' matters of internal military governance, like troop morale or discipline, 'courts must be careful not to circumscribe the authority of military commanders to an extent never intended by Congress'" and held that where "Congress has vested the military with 'unfettered discretion' over . . . matter[s]," those matters are not subject to a negotiated grievance procedure. However, there is no comparable line of authority for matters of internal police governance, nor does the CAA give the Police Board "unfettered discretion" over terminations.

appeal terminations, they cannot obtain those rights through the negotiated grievance procedure." Petitioner's Br. at 3.[15]    The Police relies on the Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439 (1988), and cases interpreting *Fausto*.    That argument is not supported by the *Fausto* line of cases and is untenable.

*Fausto* presented the question of whether the Civil Service Reform Act ("CSRA") precluded a nonpreference eligible employee in the excepted service from seeking judicial review for an allegedly improper job suspension. Such review was admittedly not available before the MSPB under the CSRA.  But the employee asserted that review was available in the Court of Claims under the Back Pay Act.  *Id.* at 440–41.  The Supreme Court noted that the CSRA "comprehensively overhauled the civil service system" and created an elaborate "new framework for evaluating adverse personnel actions against" executive branch employees, including the right to appeal agency decisions to the MSPB and then to this court.  *Id.* at 443, 446 (citation omitted).  But "[n]o provision of the CSRA gives nonpreference eligible members of the excepted service the right to administrative or judicial review" of adverse personnel actions.  *Id.* at 443.  Because the employee was classified as a "nonpreference eligible [employee] in the excepted service," the Court held that the CSRA precluded judicial review under the Back Pay Act, as well as under the CSRA.  *Id.* at 455.

This was so because Congress intended the CSRA to provide "an integrated scheme of administrative and judicial review" of personnel action taken against executive branch employees.  *Id.* at 445.  The Court found that "the comprehensive nature of the CSRA [and the failure

---

[15]    Citations are to the parties' briefs in No. 2017-2061.

to provide review to nonpreference eligible employees as part of the comprehensive scheme for review], combine to establish a congressional judgment that those employees should not be able to demand judicial review." *Id.* at 448. Thus, the CSRA's "deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevent[ed] respondent from seeking review in the Claims Court under the Back Pay Act." *Id.* at 455.

Other circuits have read *Fausto* to preclude executive branch employees (when not entitled to MSPB review as to adverse personnel actions) from resort to review through CBA grievance procedures. *See, e.g.*, *Dep't of the Treasury, Office of Chief Counsel v. Fed. Labor Relations Auth.*, 873 F.2d 1467, 1469–72 (D.C. Cir. 1989); *U.S. Dep't of Health & Human Servs. v. Fed. Labor Relations Auth.*, 858 F.2d 1278, 1283–84 (7th Cir. 1988); *see also Dep't of Health & Human Servs., Region IX, S.F., Cal. v. Fed. Labor Relations Auth.*, 894 F.2d 333, 334 (9th Cir. 1990). Those circuits have relied on the election of remedies provision of 5 U.S.C. § 7121(e)(1) (set forth below) as allowing arbitration only as an alternative to MSPB review. If MSPB review is not available, neither is arbitration.

The Police points out that Congress chose not to give legislative employees MSPB rights, and argues that this should preclude resort to grievance procedures as well. The Police argues that the Union's proposals were thus inconsistent with law and therefore nonnegotiable.

Unlike the CSRA at issue in *Fausto*, the CAA did not create a comprehensive statutory scheme giving MSPB review to all but a few legislative branch employees. Nor does the election of remedies provision of § 7121(e)(1) apply to legislative employees. To be sure, § 7121 was

incorporated into the legislative branch scheme by the CAA because that provision created the right to negotiated grievance procedures. But § 7121(e)(1) has no application to the legislative branch. The provision states:

> Matters covered under sections 4303 and 7512 of [the CSRA] which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title [before the MSPB] or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e)(1). This election of remedies provision cannot be read as precluding arbitration where administrative or judicial review is not available. There is no requirement under the CAA that legislative employees elect between MSPB review and a negotiated grievance procedure because MSPB review is not available to legislative employees.

Notably, there is another election of remedies provision in § 7121(e)(1)—not relied on in the *Fausto* line of cases. That provision states:

> Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, <u>if any</u>, applicable to those matters, or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e)(1) (emphasis added). The incorporation of § 7121 in the CAA makes this provision applicable to legislative branch employees. *See* 2 U.S.C. § 1351(a)(1). The D.C. Circuit's decision in *Department of the Treasury* concluded that employees covered under "other personnel systems" (that is, other than the MSPB system), can resort to grievance procedures even if they have no right

to judicial review. 873 F.2d at 1472.[16] Under this theory, the incorporation of that language in the CAA demonstrates that legislative employees (being covered by an "other personnel system") could resort to grievance procedures even if they have no right to judicial review. We agree with the D.C. Circuit's *Department of the Treasury* decision and that its reasoning applies here as well.

In short, arbitrator review of termination decisions is not precluded by a comprehensive scheme as in *Fausto*, and the incorporation of § 7121 into the CAA confirms that arbitrator review of termination decisions is not contrary to law. Thus, unlike executive branch employees who are subject to the CSRA but do not have MSPB appeal rights, we see no reason why termination decisions cannot be part of a negotiated grievance procedure for Police employees, regardless of whether or not the Chief's decisions are themselves judicially reviewable.

In other words, there is no inconsistency between the Union's proposals, which would allow Police employees to grieve termination decisions through arbitration, and the fact that those employees lack MSPB appeal rights under title 5.

CONCLUSION

Because this court does not have jurisdiction over the Police's petition for review, we dismiss the Police's petition for lack of jurisdiction. We grant the Office of Compliance's petition to enforce the Compliance Board's decision because the Compliance Board was not required to refer the matter to a hearing officer, and the Compli-

---

[16] This is not to suggest that an arbitrator's decision, made pursuant to a negotiated grievance procedure of the CBA, would be judicially reviewable. *See Nieuwdorp v. Library of Cong.*, 872 F.2d 1000, 1001–02 (Fed. Cir. 1989).

ance Board correctly concluded that the proposals were not inconsistent with law.

**DISMISSED AS TO 2017-2061 AND GRANTED AS TO 2018-1504**

COSTS

No costs.